Gloria SANDQUIST et al., Plaintiffs,

v.

Peter PITCHESS, etc., et al., Defendants.

Milton LUROS, Plaintiff,

v.

Evelle J. YOUNGER et al., Defendants.

WORLD NEWS, INC., etc., Plaintiffs,

v.

Edward M. DAVIS, etc., et al., Defendants.

Civ. Nos. 71–393, 69–432 and 69–2477.

United States District Court,
C. D. California.

Sept. 13, 1971.

Stanley Fleishman, Hollywood, Cal., for plaintiffs Milton Luros, World News, Inc., etc.

Berrien E. Moore by Kenneth Scholtz, Gardena, Cal., for plaintiffs Gloria Sandquist and others.

John D. Maharg, County Counsel by Michael H. Dougherty, Deputy County Counsel for defendants Younger and Pitchess and others.

Roger Arnebergh, City Atty., by John T. Nevill, Deputy City Atty., for defendants Arnebergh, Davis, and Reddin.

OPINION AND ORDER OF THREE-JUDGE COURT DISMISSING ACTIONS

Before ELY, Circuit Judge, and CURTIS and HILL, District Judges.

IRVING HILL, District Judge:

In each of the three instant cases Plaintiffs invoke the aid of the federal court under the Civil Rights Act, 42

U.S.C. § 1983, and the Federal Declaratory Judgments Act, 28 U.S.C. § 2201. All plaintiffs seek to restrain the further prosecution of criminal cases filed against them by county and city officials under the California obscenity statutes, Penal Code §§ 311 and 311.2. All plaintiffs assert that the said state statutes are unconstitutional on their face and as applied. Each plaintiff also seeks a declaratory judgment as to the unconstitutionality of said state laws. In *Sandquist* the defendants are the Sheriff and District Attorney of Los Angeles County. In the other two cases, the District Attorney and Sheriff are named along with the Chief of Police and City Attorney of the City of Los Angeles. A three-Judge court was convened in each case with the undersigned as the members thereof.

Defendants in each case have filed a motion to dismiss the action under the authority of a group of recent decisions of the United States Supreme Court, all rendered February 23, 1971, namely, Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781 (1971); Byrne v. Karalexis, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792 (1971); Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971); and Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971).

In *Luros* and *World News*, which were both filed in 1969, this Court had previously stayed its hand awaiting a definitive decision from the California Supreme Court as to the constitutionality of Penal Code §§ 311 and 311.2 in a case that was already pending before that court, *People v. Luros*. By a 4–3 decision filed February 18, 1971, (4 Cal.3d 84, 92 Cal.Rptr. 833, 480 P.2d 633) the California Supreme Court has now held these statutes to be constitutional. We are informed that certiorari has been applied for in People v. Luros but has neither been granted nor denied up to this time.*

*Sandquist* is a more recently filed action. Since the defendants' motion to dismiss filed therein appears to involve the same considerations as are involved in defendants' motions to dismiss in *Luros* and *World News*, all three motions to dismiss were set down for argument on March 25, 1971, and all three were argued together.[1]

Plaintiff *Luros* is a dealer in magazines and books, among which are dozens of titles and different publications which have been challenged by county and municipal authorities as obscene.

Plaintiff *World News* is a wholesaler of apparently similar books and magazines, distributing at least 100 separate titles per month to about 500 dealers, primarily book stores and newsstands. Many of its different publications have likewise been challenged as obscene.

Plaintiff *Sandquist* operates a small establishment best characterized as a

---

* Certiorari was later denied by the U.S. Supreme Court, 404 U.S. ——, 92 S.Ct. 51, 30 L.Ed. 52 (Oct. 12, 1971).

1. Plaintiffs in *Sandquist* seek a preliminary injunction against further prosecution of the pending criminal cases against them and against further seizures of allegedly obscene material without a prior adversary hearing which Defendants oppose. This Court had previously granted a limited preliminary injunction in *World News*. Defendants therein have now also moved to terminate the said preliminary injunction. No preliminary injunction was granted in *Luros* because the parties had stipulated to a stay of all state court proceedings related thereto. Plaintiff in *Luros* now seeks a preliminary injunction against Defendants' further enforcement of the state obscenity statutes. In view of our order herein granting defendants' motions to dismiss in all three cases, all questions before us relating to preliminary injunctions are moot.

theatre-bar in which are continuously shown, day and night, a series of different untitled 14-minute motion pictures depicting sexual intercourse and copulation by two or more nude persons of the same or different sexes. Apparently the establishment has no liquor license and sells only soft drinks. To gain admission, one is required to pay a $1 admission charge and to order one soft drink. Prospective patrons are advised of the nature of the pictures being shown inside.

We have determined to grant the motion to dismiss in each case.

From the aforementioned new decisions of the Supreme Court, we extract the following principles:

■ 1. 28 U.S.C. § 2283 prohibits a federal district court from enjoining pending or threatened state criminal prosecutions except in extraordinary circumstances where irreparable injury can be shown. What that showing must be is discussed in detail *infra*. The prohibitory effect of Section 2283 has not been limited by either the Civil Rights Act, 42 U.S.C. § 1983, or the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

2. A federal district court may not render a declaratory judgment as to the unconstitutionality of a state criminal statute at the behest of a plaintiff who is either undergoing prosecution thereunder or is threatened with such prosecution, unless such a showing of irreparable injury is made. The effect of such a declaratory judgment is the same as that of an injunction.

■ 3. A claim that a criminal statute being invoked by state authorities is unconstitutional on its face or as applied,

is not of itself a sufficent showing to warrant intervention by a federal court in pending state criminal proceedings.

We believe the clearest statement summarizing the rule established by the new decisions is contained in the opinion of the Court in *Perez v. Ledesma* as follows:

"Only in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown is federal injunctive relief against pending state prosecutions appropriate." 401 U.S. at 85, 91 S.Ct. at 677.

The basic rule is somewhat similarly phrased in the opinion of the Court in *Samuels v. Mackell, supra*, as follows:

" * * * a federal court should not enjoin a state criminal prosecution begun prior to the institution of the federal suit except in very unusual situations, where necessary to prevent immediate irreparable injury." 401 U.S. at 69, 91 S.Ct. at 766.

Thus it appears that in deciding the instant motions to dismiss we must determine, in each case before us, the question of whether irreparable injury is shown. As emphasized in *Younger v. Harris, supra* (401 U.S. at 45–46, 91 S. Ct. 746), the irreparable injury must be "great and immediate." The determination must be made "carefully under the facts of each case." *Dyson v. Stein, supra* (401 U.S. at 203, 91 S.Ct. at 771). In order to make the determination, it seems clear that the allegations of the complaint may be examined,[2] and other facts before the court may also be examined.[3]

2. See Boyle v. Landry, *supra*, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971); concurring opinion of Justice Brennan in *Samuels, supra*, 401 U.S. at 76, 91 S.Ct. 764, 27 L.Ed.2d 688.

3. See, e. g., Dombrowski v. Pfister, 380 U. S. 479, 482, 85 S.Ct. 1116, 14 L.Ed.2d 22

(1965) (affidavits and written offer of proof). See also dissenting opinion of Justice Douglas in Dyson v. Stein, *supra*, 401 U.S. at 205, 91 S.Ct. 769, 27 L.Ed. 2d 781 (documentary evidence in support of harassment claim).

The new opinions discuss two kinds of situations in which federal court injunctions against state criminal prosecutions may yet be valid, situations whch admittedly meet the great and immediate irreparable injury requirement. The first is where the statute involved is flagrantly and patently unconstitutional. The Court said in Younger v. Harris, *supra:*

"There may, of course, be extraordinary circumstances in which the necessary irreparable injury can be shown even in the absence of the usual prerequisites of bad faith and harassment. For example, as long ago as the *Buck* case [Watson v. Buck, 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416], *supra,* we indicated:

'It is of course conceivable that a statute might be flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it.' 313 U.S., at 402 [61 S.Ct., at 967]." [401 U.S. at 53–54, 91 S.Ct. at 755]

We hold that the two California statutes in question—California Penal Code § 311 and 311.2—are not "flagrantly and patently" unconstitutional within in the meaning of this exception.[4]

The other, much more common, type of irreparable injury is referred to in the opinions as "bad faith" and "harassment" on the part of the state or local authorities in the enforcement of their criminal statutes. The opinions are not clear as to whether "bad faith" and "harassment" are two separate concepts or a single concept, and they afford no precise definition of either term. We cite in the footnote some of the language employed in the new opinions which gives rise to this uncertainty.[5]

We have been cited to no appellate court definition of the terms "bad faith" and "harassment" and no discussion of the relationship they must bear to each other for the purpose of making out justification to enjoin state court criminal proceedings. And we have found no such appellate court decisions. We must perforce abandon any effort to achieve a precise definition. Perhaps the most readily appliable and most understandable synthesis of what showing is required to warrant an injunction, is the term used by Mr. Justice Stewart to de-

4. We note that the primary attack on the constitutionality of said statutes centers around the proposition that the protection of the right to possess obscene materials in one's own home, as articulated in *Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), should be extended to the distribution of such materials to consenting adults. But recent decisions greatly weaken this attack. As stated, the California Supreme Court sustained the constitutionality of these statutes as against said "consenting adult" attack in *People v. Luros, supra.* Moreover, recent U.S. Supreme Court decisions in United States v. Reidel, 402 U.S. 351, 91 S.Ct. 1410, 28 L.Ed.2d 813 (1971), and United States v. Thirty-Seven (37) Photographs, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971), refuse to extend the rationale of *Stanley v. Georgia* to the right to distribute to consenting adults. And the Supreme Court recently vacated without opinion the decision of a three-judge court holding unconstitutional an Oregon statute quite similar to California Penal Code §§ 311 and 311.2. See *Van Hoomissen v. Hayse*, 403 U.S. 927, 91 S.Ct. 2248, 29 L.Ed.2d 705 (1971). In light of all of this recent case law, we could not hold the said statutes to be "flagrantly and patently" unconstitutional.

5. The various opinions contain an interesting mixture of the use of the words "bad faith" and "harassment" in juxtaposition to each other. For example, "bad faith and harassment." *Younger v. Harris, supra,* 401 U.S. at 49, 53, 56, 91 S.Ct. 746 (Opinion of the Court; Stewart, J., concurring opinion) ; Dyson v. Stein, *supra,* 401 U.S. at 204, 91 S.Ct. 769 (Brennan, J., concurring opinion). "Bad faith or harassment." Younger v. Harris, *supra,* 401 U.S. at 50, 91 S.Ct. 746 (Opinion of the Court; *Byrne v. Karalexis, supra,* 401 U.S. at 221, 91

scribe conduct of state officials; i. e., "official lawlessness." See *Younger v. Harris*, 401 U.S. 37, 56, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (concurring opinion).

Another way of approaching the problem is to use a test enunciated in *Douglas v. City of Jeannette*, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943) which case is cited with approval throughout the new opinions. In *Douglas,* the Court said that it must "appear from the record that petitioners have been threatened with [an] injury other than that incidental to every criminal proceeding brought lawfully and in good faith, or that a federal court of equity by withdrawing the determination of guilt from the state courts could rightfully afford petitioners * * * protection which they could not secure by prompt trial and appeal pursued to this Court." 319 U.S. at 164, 63 S.Ct. at 881.

Still another way of approaching the problem is to examine the facts that were present in *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). *Dombrowski* is the leading case in the field. It is the one primarily relied on by plaintiffs and judges in the many cases prior to the Supreme Court's new decisions in which controversies over state and local obscenity statutes and prosecutions were moved into the federal courts. *Dombrowski* was not overruled in the new opinions although cases in lower courts extending the *Dombrowski* rationale were sharply criticized. It is thus useful to measure the facts of any case wherein state criminal actions are sought to be enjoined against the showing made in *Dombrowski.*

The showing in *Dombrowski* was that the Governor, the Chairman of the Legislative Committee on Un-American Activities, and various law enforcement officers were prosecuting and threatening prosecution of plaintiffs for alleged violations of a state Subversive Activities Control statute and a state Communist Propaganda Control statute. Plaintiffs were an educational fund, its officers and its attorney. Their affidavits and offers of proof were to the effect that the prosecutions were not made with any expectation of securing valid convictions; but were part of a plan to discourage the organization and its officers from attempting to vindicate Negro constitutional rights within the state. They detailed a raiding of the organization's office and a seizure of its files. Subsequently the state court quashed arrest warrants and ordered the seized evidence suppressed. But the state court orders were not honored or observed by the other state officials involved. The constitutionality of the state statutes had apparently never been adjudicated by the highest court of the state and there was no immediate prospect of a final state adjudication of their constitutionality. The whole course of prosecution, it was charged, was an effort to discourage the operations of the educational fund by exposing identity of its members and officers and by frightening off potential members and contributors, the prosecutions being repeatedly accompanied by public announcements branding the organization as subversive and a Communist front.

We now proceed to analyze the showings in each of the three instant cases to see whether they do or do not meet the standards and concepts just dis-

---

S.Ct. 777 (Brennan, J., dissenting opinion) ; "proven harassment or prosecutions undertaken * * * in bad faith * * *" *Perez v. Ledesma, supra,* 401 U.S. at 85, 91 S.Ct. at 677 (Opinion of the Court) "Bad faith to harass." *Younger v. Harris, supra,* 401 U.S. at 56, 91 S.Ct. 746 (Brennan, J., concurring opinion) ; Perez v. Ledesma, *supra,* 401

U.S. at 97, 91 S.Ct. 674 (Brennan, J., concurring in part, dissenting in part) ; "Bad-faith harassment." *Samuels v. Mackell, supra,* 401 U.S. at 76, 91 S.Ct. 764 (Brennan, J., concurring opinion) ; *Perez v. Ledesma, supra,* 401 U.S. at 97, 91 S.Ct. 674 (Brennan, J., concurring in part, dissenting in part.)

cussed. In each of the instant cases preliminary injunctions were requested and opposed. So we have a good deal of evidentiary matter before us in addition to the complaint and answer.

## WORLD NEWS

As stated above, Plaintiff World News is a wholesaler of printed materials having about 500 dealers in the area and distributing dozens of separate titles each month. The gravamen of its complaint is that the state obscenity laws (Penal Code 311 and 311.2) were amended effective November 10, 1969, and at about that time Defendants, who are city and county law enforcement officials and prosecutors, launched a widespread series of arrests and prosecutions against retailers of allegedly obscene materials, many or most of whom were customers of Plaintiff. This is characterized as a "raid" and a letter from District Attorney Younger, dated November 10, 1969 (attached as an exhibit to the complaint), is charged as constituting a threat of continuous wholesale prosecutions amounting to bad-faith harassment. Incidentally, an examination of the said letter of November 10, 1969, indicates it could not reasonably be interpreted as any threat as claimed. It appears to be a mimeographed letter sent to a large number of persons who distribute printed materials. It is an objective, dispassionate analysis of the new statutes and the existing legal definitions of obscenity with an offer to advise any retailers seeking further information about either. It contains a temperate factual statement of how the district attorney's office interprets the statutes and will go about enforcement of them.

Plaintiff charges that within a few days around November 10, 1969, Defendants commenced 62 cases against its retailers and arrested approximately 80 persons in connection with such cases. It is also now alleged that following the filing of Plaintiff's complaint in this court, 24 more cases have been filed involving materials originating with Plaintiff. All arrests are alleged to have been accomplished by physical arrest and booking. Bail was set in the amount of $625 for each person arrested. Plaintiff claims that as a result of a widespread custom in its business, Plaintiff, as the originator of the material involved, is required to defend these cases and put up the bail for the persons arrested. Plaintiff contends that it has spent more than $6,000 in bail-bond premiums. Plaintiff says that in some instances more than one of its customers have been charged with the sale of the same publication. In a number of situations the same publication is the subject of two cases against different retailers operating at different locations and in a few instances more than two cases involve the same publication. In one situation, it is claimed that 8 different retailers are charged with selling the same publication. Plaintiff claims to have lost 31 per cent of its retailers as a result of the said multiple prosecutions. Neither the complaint nor any of the affidavits filed later claim that Plaintiff itself has been prosecuted since November, 1969.

Defendants have described for the court their procedure in initiating prosecutions of this type. It involves an initial examination of the material in question by law enforcement officers with substantial training and experience in the field including familiarity with the latest court decisions in the field. Then, if the material is determined to be presumptively obscene, a referral of the material is made to special units of lawyers in the prosecutor's office likewise having extensive experience and training. Thereafter, before any complaint is issued or arrest undertaken, the material is submitted to a Municipal Judge for a judicial determination of probable cause which involves an initial determination of obscenity. Defendants concede that there was no prior adversary hearing on the question of obscenity before the arrests occurred. California state law provides

for a preliminary determination of obscenity or non-obscenity by pre-trial motion. All defendants, by affidavit, disclaim any effort at harassment and any bad faith, stating that their sole purpose and intention is good-faith enforcement of the laws.

## LUROS

As stated above, Plaintiff Luros is a dealer in magazines and books, handling dozens of different titles and publications including different issues of magazines bearing the same title. His complaint sets forth that between February, 1964, and February, 1969, a five-year period, he was arrested for violating the obscenity laws on 13 different occasions. Some of these arrests were originated by the Los Angeles Police Department officers with the prosecutions being handled by the Los Angeles City Attorney. Others were originated by the representatives of the Los Angeles County Sheriff's office with the prosecutions being handled by the Los Angeles County District Attorney. Some of the cases involved only a single book or magazine. Others involved many books and magazines. For example, the arrest of October 26, 1964, appears to have involved 25 different titles.

Of the 13 cases, 9 had been completed prior to the filing of the instant action. In all of these, the prosecutions had been terminated favorably to the Defendant therein (Plaintiff herein) before trial, all apparently as a result of pre-trial motions. Only four cases were still pending as of the filing of the instant complaint. One of these was *People v. Luros*, discussed *supra,* in which the Supreme Court of California held the statutes involved to be constitutional. The complaint charges harassment and bad faith as well as irreparable injury. The complaint charges that the Defendants are attempting to drive Plaintiff out of business. It charges that the arrests of Plaintiff have been made by taking Plaintiff into physical custody and booking

rather than by citation. The complaint charges that the statutes are being discriminatorily enforced by Defendants in that Defendants are not prosecuting other dealers handling materials which go beyond Plaintiff's materials in sexual candor.

Defendants admit that there have been no prior adversary hearings as to the obscenity of any of the material involved. But, as in *World News,* the Court has the benefit of a detailed description of the procedure being followed by both the city and the county law enforcement officers in initiating obscenity prosecutions. The same Defendants are involved as in *World News.* The same procedure is used as we have described *supra.* Defendants' affidavits explicitly deny any threats to Plaintiff, any purpose of harassment, any bad faith, or any effort to put him out of business.

## SANDQUIST

Some of the facts underlying the *Sandquist* case are set forth above; i. e., the nature of the establishment and its practice of showing a large number of different untitled 14-minute motion pictures depicting various forms of explicit sexual activity. The chief investigating officer for the County Sheriff's office estimates that in the course of a year the establishment shows over 17,000 separate film showings.

The complaint contains no express claim of bad faith or harassment, although it does claim irreparable harm.

The complaint alleges that Sheriff's officers have entered the premises to make arrests on 9 different occasions over an 11-month period. Each arrest was made pursuant to a search warrant which was obtained on the basis of a specific description of one or more films observed by Sheriff's personnel shortly before the issuance of the warrant. Plaintiffs have attached to their complaint in this court the showing made by the Sheriff's office in commencing each

of the 9 cases. The complaint makes no reference to the number of criminal cases, if any, which have been commenced, but the Court assumes that each of the 9 seizures and arrests has resulted in a separate criminal case being commenced. The complaint charges that on each occasion the officers have seized one or two films pursuant to their warrant and also the film projector then being used. One of the Plaintiff's employees charges that on the occasion of one arrest, customers were told to leave unless they themselves wish to risk arrest. On one occasion it is claimed that the officers made a general search of the premises, including desks, drawers, and personal correspondence, and files.

Defendants describe how the cases against Plaintiff were originated. All proceedings involving this Plaintiff have apparently been in charge of a Sgt. Greenlees of the Sheriff's Office, a 23-year veteran with 11 years of experience in obscenity investigations, during which time he personally conducted 5,000 such investigations. The Sergeant has testified in court as an expert on obscenity standards more than 200 times. Before any search warrant was sought, the eye-witness reports on the films involved (rendered always by a team of more than one observing officer) were scrutinized by an experienced senior officer, i. e., Sgt. Greenlees. After the search warrants were obtained and the films were seized, the films were presented to an experienced officer of the District Attorney's office for further opinion and action. In one instance, the films were shown to a Municipal judge. Arrests were made of supervising employees in attendance in each case by the procedure of physical arrest and booking, with bail being set in each instance. No adversary hearing was held as to the obscenity of the material in advance of the seizure thereof.

## CONCLUSION

■ In each case, we find a factual situation far less grievous than that shown in *Dombrowski*. In each case, we find no substantial indication of "official lawlessness." In each case, we find that petitioners have been threatened with no injury other than that incidental to every criminal proceeding brought lawfully and in good faith. In each case we further find, within the concept of *Douglas v. City of Jeannette, supra*, that there is no proper protection which should be afforded to petitioners by withdrawing the determination of guilt from the state courts which protection they could not secure by prompt trial in the state courts and eventual appeal, if necessary, to the U. S. Supreme Court.

Plaintiffs in each case stress that they have encountered multiple arrests and prosecutions. They point to a sentence in the opinion of the court in *Younger* as follows:

> "There is no suggestion that this single prosecution against Harris is brought in bad faith or is only one of a series of repeated prosecutions to which he will be subjected." 401 U.S. at 49, 91 S.Ct. at 753.

They urge that the multiplicity of the prosecutions establishes the requirement of irreparable injury. We do not agree.

Where one distributes or exhibits a great number of different publications or films, each of which is colorably obscene, he assumes a risk of multiple prosecutions and the number of arrests and prosecutions he encounters cannot be determinative of whether bad-faith harassment has occurred. One might agree, *arguendo*, that the arrest and prosecution for ten straight nights of the operator of a theater showing the same play might constitute harassment, a misuse of the criminal law to suppress the play. But, ten prosecutions over a period of months against either a theater-bar operator who exhibits dozens of different short-length movies per day, or one who distributes hundreds of separate issues or titles weekly or monthly, sure-

ly cannot be equated with the former situation.

In each case before us, we find that the multiplicity of the prosecutions falls far short of constituting irreparable injury within the concepts enunciated by the Supreme Court.

In each case we believe considerations of comity between the federal and state governments and their judicial systems, and considerations of proper federalism as elucidated by the Supreme Court in its recent decisions, require dismissal of the action.

We wish to make it clear that our dismissal adjudicates only that the Plaintiffs have no right to injunctive relief in this court. We also wish to make it clear that we intend no blanket approval of all of the procedures adopted by the various Defendants. For example, when prosecuting book dealers and news dealers operating at established locations, we would hope that physical arrest would not be employed on every occasion. The state law provides a citation procedure which may be used in lieu of arrest. The citation procedure would seem adequate to guarantee the presence of such Defendants in court. There is no realistic danger that these Defendants would flee. Moreover, the seizure of a film projector each time there is an arrest in the establishment of *Sandquist* would seem unnecessarily harsh.

But these matters do not justify federal court intervention. We mention them only in passing in the hope that Defendants may see fit to reconsider and modify some of their tactics.

As stated above, the motion to dismiss is granted in each case. This Opinion and Order constitute the Court's findings of fact and conclusions of law if such are deemed to be required. This Opinion and Order shall be filed and recorded as the judgment of the Court.

ELY, Circuit Judge (dissenting):

I respectfully dissent. We long withheld our disposition of the subject cases pending a decision by the California Supreme Court as to the constitutionality of the California statute which is here challenged. The controversy in California's high court was there argued, again reargued after a change in the composition in the court, and, at long last, resolved in an opinion with which three of the seven justices of the court disagreed. People v. Luros, 4 Cal.3d 84, 92 Cal.Rptr. 833, 480 P.2d 633 (1971). I find the dissenting opinion of Mr. Justice Tobriner more persuasive than that issued by the majority of his Brothers. Moreover, I have previously recorded my view that an Oregon statute which, as interpreted by the Supreme Court of Oregon, is very similar to the statute here under attack, is constitutionally invalid. *See* Hayse v. Van Hoomissen, 321 F.Supp. 642 (D.Ore. 1970), vacated sub nom., Van Hoomissen v. Hayse, 403 U.S. 927, 91 S.Ct. 2248, 29 L.Ed.2d 705 (1971). That case has not yet been reconsidered and resolved by the three-judge District Court to which it was remanded. I understand, too, that the California Supreme Court's decision in *People v. Luros* is not final, review thereof being sought in the Supreme Court of the United States. It seems to me, therefore, that there is no such pressing urgency, after our already long abstention, which should require that we now issue a dispositive order of dismissal while some uncertainty remains and while *People v. Luros* remains pending. I would therefore further abstain until the Supreme Court had denied certiorari in *People v. Luros* or has granted certiorari and made the conclusive decision as to whether the challenged California statute is or is not valid.

Added to the foregoing consideration is my belief that the allegations of the complaints, particularly by World News and Luros, are such that orders for the dismissal of the complaints are inap-

propriate. There are charges of harassment and "bad faith" prosecutions on the part of California officials which, if true, would warrant this court's intervention under the principles announced by the Supreme Court in *Younger v. Harris* and *Perez v. Ledesma*. There are no motions for summary judgment before us, and the factual record which we now have is too inadequate to enable me to join in holding, with assurance, that the plaintiffs cannot prove that they are entitled to relief. The procedure which my Brothers employ divests the plaintiffs of their right to adduce proof that, if developed, could legally entitle them to protection which this court is empowered to afford. I cannot conscientiously join in an order which, as I see it, bypasses traditional procedural rights essential to the guarantee of justice in the federal courts.