GRANDCO CORPORATION, an Illinois Corporation, et al., Plaintiffs-Appellees,

v.

James M. ROCHFORD, Individually and as Acting Superintendent of Police of the City of Chicago, et al., Defendants-Appellants.

No. 75–1535.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 15, 1976.

Decided June 8, 1976.

William R. Quinlan, Corp. Counsel, Richard F. Friedman, Asst. Corp. Counsel, Daniel Pascale, Asst. Corp. Counsel, Chicago, Ill., for defendants-appellants.

Patrick A. Tuite, Chicago, Ill., for plaintiffs-appellees.

Before HASTINGS, Senior Circuit Judge, SWYGERT, Circuit Judge, and EAST, Senior District Judge.*

HASTINGS, Senior Circuit Judge.

On this appeal we consider whether the district court properly entered a declaratory judgment that a Chicago municipal ordinance governing the licensing of motion picture theaters is unconstitutional on its face and enjoined its enforcement. The defendant city officials challenge the district court's action on three grounds: (1) that federal relief is barred by the existence of pending state proceedings against the plaintiffs, (2) that plaintiffs lack standing to challenge the ordinance, and (3) that the ordinance is, in any event, constitutional on its face.

### I.

Plaintiffs are three corporations which operate motion picture theaters in Chicago.[1] Chicago ordinances make it unlawful for plaintiffs to operate their theaters without first obtaining a public place of amusement license from the City.[2] An applicant for this license must receive the approval of several city departments. The Department of Revenue obtains an applicant's personal guarantee that all amusement taxes will be paid. The Zoning Department certifies that the applicant's place of business conforms with city zoning regulations. The Building and Fire Departments inspect the premises to determine compliance with municipal building and fire codes. In addition, the applicant is investigated by the Chicago Police Department, which, based on guidelines established by the Department, recommends approval or disapproval of the application.

Following investigation by these various city departments, the application is forwarded to the office of the mayor who determines whether to issue the public place of amusement license. The mayor's determination is governed by Section 101–5 of the Chicago Municipal Code, which provides in part:

Upon receiving satisfactory proof from the Director of Revenue that the applicant or each of the principal officers, if

---

* The Honorable William G. East, Senior United States District Judge for the District of Oregon, is sitting by designation.

1. The presidents of the three corporations are also parties plaintiff.

2. Municipal Code of Chicago ch. 104.1, § 104.-1–2 (1975).

the applicant is a corporation, is a fit and proper person to be granted such license, and that all laws and provisions of this Code regulating the business or occupation for which such license is applied for, have been complied with, the Mayor may authorize the issuance of said license by the City Clerk.

Municipal Code of Chicago ch. 101, § 101–5 (1975). If the mayor rejects an application, the applicant is entitled to a public hearing before a hearing examiner appointed by the mayor. If the mayor, after consideration of the hearing examiner's report, again rejects the application, he must notify the applicant in writing of his decision and the reasons for it. *Id.*

The three plaintiff corporations are unsuccessful applicants for municipal public place of amusement licenses. The particular facts relating to each plaintiff's unsuccessful application appear in the pleadings and exhibits of record. Plaintiff Grandco Corporation applied for a license, but the City has not issued it a license, and its manager has received citations for operating without one.[3] Plaintiff Festival Theatre Corporation operated several theaters apparently under a license issued to a third party. The City has begun proceedings to revoke the license under which it has been operating, and its application for a new license has been denied.[4] Plaintiff Wabash Books, Inc., applied for a public place of amusement license but its application was denied. The City has brought some 100 cases against its manager for operating without a license, and Chicago police officers have on several occasions arrested its manager and seized its films and projection equipment. According to a stipulation by the parties, no evidence indicates that any of plaintiffs' premises violate municipal zoning, building or fire regulations.

Plaintiffs brought this action under the Civil Rights Act, 42 U.S.C. §§ 1983 and 1985 against the Chicago Chief of Police, the mayor, and two Chicago police officers, challenging on First Amendment grounds the language in Section 101–5 of the Municipal Code which provides that the mayor *may* grant a public place of amusement license to persons operating a motion picture theater upon a *satisfactory* showing that they are *fit and proper* persons. Defendants' initial motion to dismiss the complaint on the grounds that plaintiffs lacked standing and that federal relief was barred because of pending state proceedings against the plaintiffs was denied. The plaintiffs thereafter filed a motion for summary judgment. On April 7, 1975, the district court granted plaintiffs' motion and entered a declaratory judgment that the municipal ordinance is unconstitutional on its face and a permanent injunction against its continued enforcement.

## II.

We first consider whether federal declaratory and injunctive relief was improper in this case under the doctrine of federal equitable restraint articulated by the Supreme Court in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

 The Court held in *Younger* that when state criminal proceedings under a challenged criminal statute are pending against a federal plaintiff at the time his complaint is filed, principles of equity, comity and federalism generally preclude issuance of a federal injunction restraining

---

**3.** There is evidence that Grandco's application was not, in fact, denied, but rather was withdrawn at Grandco's request.

**4.** In its original complaint, Festival alleges that it operates the Three Penny Cinema under a management agreement with John Rossen, owner of the theater. Exhibits introduced by the city officials indicate that a license was issued for operation of the Three Penny Cinema to Cine La Joya Corporation and its President, John Rossen. It is this license which the City now seeks to revoke. A prior application to transfer this license to Festival Theatre Corporation was denied. In its amended complaint of November 8, 1974, Festival further alleges that it operates the Bijou Theatre, Festival Theatre, Aardvark Theatre and Termite Theatre. Proceedings have been commenced to revoke the licenses for those theaters, although it is not clear from the record whether these licenses are held by Festival or, like the Three Penny Cinema license, by a third party.

enforcement of the challenged statute. Federal declaratory relief is similarly barred. *Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971). An exception to this rule is recognized only where the federal plaintiff demonstrates official bad faith or harassment in enforcement of the statute or where other extraordinary circumstances justify federal relief. *Younger,* 401 U.S. at 56, 91 S.Ct. 746; *see Dombrowski v. Pfister,* 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). The fact that a state statute is unconstitutional on its face and impermissibly "chills" a federal plaintiff's exercise of First Amendment rights does not justify federal relief against good faith efforts by state officials to enforce it. 401 U.S. at 54, 91 S.Ct. 746. Federal courts will assume in these circumstances that the federal plaintiff's constitutional rights can be adequately vindicated in state court proceedings without any federal intrusion.

The district court in this case found sufficient evidence of official harassment in the City's enforcement of the challenged municipal licensing ordinance against plaintiff Wabash Books, Inc., to warrant injunctive and declaratory relief in spite of general principles of federal equitable restraint. The court's conclusion was supported by the following findings:

> From the present record, it appears that well over 100 different cases have been filed against [the manager of Wabash Books] within the last year. On January 31, 1974, he filed a notice of appeal covering 44 separate cases in which he was convicted for operating a theater without a license. * * * At the present time, approximately 80 other cases in which he is charged with the same offense are pending in the Circuit Court of Cook County. Additionally, [he] has been charged at least four times with obscenity violations, but it appears these charges were all dismissed prior to trial. As with the other acts of the defendants charged

in the complaint, plaintiffs allege that these prosecutions are being carried on with the basic unlawful purpose and effect of intimidating, harassing and punishing them for the exercise of their constitutionally protected rights.

Memorandum of Decision, April 11, 1974 (Unreported). The evidence of multiple prosecutions coupled with allegations of official bad faith and harassment were sufficient, in the district court's opinion, to bring this case within the recognized exception to the general rule against federal equitable intervention.[5] The district court also relied on evidence that the federal plaintiffs' constitutional claim had been repeatedly rejected in the state prosecutions and that the Illinois Appellate Court in the Chicago district had only recently upheld the constitutionality of the ordinance which plaintiffs challenge.[6] In view of these consistently adverse state court decisions, the court concluded that the key assumption in the *Younger* decision that a federal plaintiff's constitutional claim can and will be vindicated in state court proceedings is simply not valid in this case.

■ The district court concluded that, because of evidence of official harassment in enforcement of the licensing ordinance against Wabash Books, the federal relief requested by that plaintiff was not barred under *Younger v. Harris.* The court did not expressly consider a possible contrary result in the application of *Younger* principles to the somewhat different factual situations presented by the other two plaintiffs. The Supreme Court, however, has recently held that the effect of the *Younger* doctrine must be determined as to each federal plaintiff in multi-plaintiff litigation. *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 928–9, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975). We therefore consider on appeal not only the correctness of the district court's conclusion with respect to Wabash Books, but also the application of *Younger* principles to plain-

---

**5.** The district court relied on a three-judge court opinion in *Movies, Inc. v. Conlisk,* N.D. Ill., 345 F.Supp. 780 (1971).

**6.** *City of Chicago v. Town Underground Theatre, Inc.,* 9 Ill.App.3d 930, 293 N.E.2d 367 (1973).

tiffs Grandco Corporation and Festival Theatre Corporation.

### A.

Based on our independent consideration of the record and of applicable Supreme Court authority, we conclude that the district court erred in finding that plaintiff Wabash Books made a sufficient showing of harassment to take this case out of *Younger's* prohibition against federal equitable intervention.

In *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975), the Supreme Court considered the application of the harassment exception in a somewhat analogous factual situation. The Court there reversed a three-judge court decision which had found sufficient evidence of official bad faith and harassment in the enforcement of California's obscenity statute against distributors of the film "Deep Throat" to permit them to bring a federal action challenging the statute's constitutionality while state prosecutions were pending against them. The lower court's finding of bad faith and harassment was based on evidence that police officers had seized copies of the film from the same movie theater four times within two days, that the theater's cash receipts had also been seized on each occasion and that law enforcement officers had apparently arranged for the film's seizure even before its first showing in their jurisdiction.

The three-judge court concluded that "the pattern of seizures of the plaintiffs' cash receipts and films demonstrate that the police were bent upon a course of action that, regardless of the nature of any judicial proceeding, would effectively exorcise the movie 'Deep Throat' out of Buena Park." *Miranda v. Hicks,* C.D.Cal., 388 F.Supp. 350, 360 (1974). The Supreme Court rejected this finding as "vague" and "conclusory." Emphasizing that each of the seizures had been pursuant to a valid warrant, the Court concluded: "Absent at least some effort by the District Court to impeach the entitlement of the prosecuting officials to rely on repeated judicial authorization for their conduct, we cannot agree that bad faith and harassment were made out." 422 U.S. at 351, 95 S.Ct. at 2293. The Court held that *Younger* required that the complaint be dismissed.

■ No stronger showing of official harassment has been made in the case at bar. The district court essentially relied on the allegations of harassment in the complaint and the evidence of multiple prosecutions. The *Younger* rule, as applied in *Hicks,* requires more than a mere allegation and a more than a "conclusory" finding to bring a case within the harassment exception. It appears that such a finding must be supported by specific evidence from which it can be inferred that state officials have been enforcing the statute against the plaintiffs in bad faith and for purposes of harassment.

■ We are not persuaded that evidence of multiple prosecutions is sufficient by itself to support this necessary inference. The facts of this case are quite different from those in *Dombrowski v. Pfister, supra,* where the Supreme Court cited evidence of multiple prosecutions in support of its finding of official bad faith and harassment. In *Dombrowski* state attempts to prosecute the federal plaintiffs had been uniformly *unsuccessful.* Yet state officials threatened to initiate new prosecutions and to conduct further searches and arrests even though earlier arrest and search warrants had been summarily vacated.

The district court expressly relied on a decision by the Ninth Circuit which affirmed a finding of official harassment upon a showing that the various plaintiffs had been subjected to over 100 prosecutions under a challenged obscenity statute. *Krahm v. Graham,* 9 Cir., 461 F.2d 703 (1972). As in *Dombrowski,* all the cases which had come to trial resulted either in acquittal or in dismissal at the instance of the prosecution. The court concluded that federal relief under these circumstances was justified, stating:

Surely the damage from this sort of activity is both irreparable and 'great and

immediate.' It can put the plaintiffs out of business without ever convicting any of them of anything. Nor can the threat to plaintiffs' first amendment rights be eliminated by defense against the state prosecutions. Successful defense against eleven of them, plus the voluntary dismissal of two others, brought the filing of fourteen more, and later of an additional nineteen.

*Id.* at 707.

In *Dombrowski* and *Krahm,* harassment and bad faith were inferred from evidence of multiple *unsuccessful* prosecutions. In the case at bar, prosecutions against the manager of plaintiff Wabash Books' enterprise have generally resulted in convictions. Continued prosecution under the ordinance for repeated violations indicates only good faith enforcement of a judicially approved provision against judicially disapproved conduct. The evidence of multiple prosecutions will not support an inference in this case of official bad faith or improper motive.

Wabash Books further alleges, however, that the defendant police officers have on two occasions conducted arrests and seizures at its place of business after a state court judge had held a previous seizure to be invalid. It appears from the record and findings of the district court that the seizures complained of were made in connection with both municipal licensing violations and state obscenity violations. It further appears that while the obscenity charges were dismissed and the seizures incident thereto invalidated, the municipal licensing charges proceeded successfully to trial.

We cannot infer from these isolated circumstances that the federal plaintiff is being subjected to such harassment that his federal rights cannot be protected in defense to the state prosecutions. *See Sandquist v. Pitchess,* C.D.Cal., 332 F.Supp. 171 (1971).[7] This is not to say that repeated law enforcement misconduct of a more aggravated nature may not justify federal intervention, as the Supreme Court found in *Dombrowski, supra.* It is enough to note that in this case any police misconduct indicated by the record falls far short of the "official lawlessness" which justified the grant of federal injunctive relief in *Dombrowski.*

■ Under these circumstances, the remedy of plaintiff Wabash Books is defense against the state prosecutions and appeal of any adverse decisions through orderly appellate channels. The existence of adverse state appellate court authority on its constitutional claim does not warrant federal intervention. As the Court noted in *Hicks,* "[s]tate courts, like other courts, sometimes change their minds. * * * In any event, the way was open for appellees to present their federal issues to this Court in the event of adverse decision in the California courts." 422 U.S. at 350 n. 18, 95 S.Ct. at 2292. It is clear that a federal district court is not a substitute for the state judicial system's appellate process. *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 609, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).

We therefore conclude that the district court erred in denying the defendants' motion to dismiss the complaint of plaintiff Wabash Books. No circumstances of record justified departure from the general rule which bars Wabash Books' claim for federal declaratory and injunctive relief against pending state criminal proceedings.

---

**7.** In *Sandquist* a three-judge court held that evidence of multiple prosecutions under a challenged state obscenity statute did not establish the degree of harassment or bad faith required to avoid *Younger's* rule against federal intervention and dismissed the federal complaint. The court concluded:

> We wish to make it clear that our dismissal adjudicates only that the Plaintiffs have no right to injunctive relief in this court. We also wish to make it clear that we intend no blanket approval of all of the procedures adopted by the various Defendants. For example, when prosecuting book dealers and news dealers operating at established locations, we would hope that physical arrest would not be employed on every occasion. * * * Moreover, the seizure of a film projector each time there is an arrest in the establishment of *Sandquist* would seem unnecessarily harsh.
>
> But these matters do not justify federal court intervention.

332 F.Supp. at 180.

### B.

Although gaps in the record pose some difficulties on review, we conclude that the action by Grandco Corporation was equally barred under *Younger*.

The district court did not make any factual inquiry into the pendency of state court proceedings against plaintiff Grandco Corporation or its manager.[8] However, Grandco alleges in its complaint, and the defendant city officials admit, that its manager has on several occasions received citations for violation of the challenged municipal licensing ordinance. These allegations are substantially similar to those of Wabash Books. Moreover, the defendants in their motion to dismiss represented that state quasi-criminal proceedings on charges relating to these violations were pending against "plaintiffs." They state more specifically on appeal that prosecutions upon the citations were pending against managers of both Wabash Books and Grandco.

We conclude that it can fairly be inferred from plaintiffs' complaint that state court proceedings against Grandco Corporation or its agent for violation of the challenged licensing ordinance were pending when its federal complaint was filed. Although the timing of state proceedings on the citations issued is not clear from the record, it is well settled that state prosecutions against a federal plaintiff preclude federal equitable relief whether they are pending at the trial or appellate level. *Huffman v. Pursue, Ltd.*, 420 U.S. at 608, 95 S.Ct. 1200. Federal relief would also be precluded if this plaintiff had failed to appeal adverse state decisions. *Id.* at 609, 95

S.Ct. 1200. Finally, Grandco alleges no circumstances to support a finding of bad faith, harassment or extraordinary circumstances which would permit federal equitable relief in spite of *Younger's* prohibition.

Although the record itself is somewhat sketchy, Grandco's allegations, when read in light of the more detailed factual record developed with respect to similar allegations by Wabash Books, indicate that Grandco has chosen to continue to engage in conduct in violation of the challenged licensing procedure and that local officials are engaged in good faith enforcement through appropriate judicial action. This is precisely the situation in which *Younger* dictates federal restraint.[9] We therefore conclude that the district court erred in denying defendants' motion to dismiss the complaint of Grandco Corporation.

### C.

Unlike Grandco and Wabash Books, Festival Theatre Corporation has not received citations for operating without a public place of amusement license, nor has it been subjected to any state criminal or quasi-criminal judicial proceedings. It appears from the record that at the time it filed its complaint, it had been operating its theaters under licenses issued to a third party. *Cf.* n. 4, *supra*. However, proceedings had been initiated by city officials to revoke those licenses. Defendants contend that these pending administrative proceedings preclude a grant of federal equitable or declaratory relief in favor of Festival Theatre under the *Younger* doctrine. We disagree.

---

**8.** The district court opinion focused on the prosecutions against Claude Jones, manager of Wabash Books. Since Jones was an agent of Wabash Books, the court concluded that application of the *Younger* doctrine was appropriate "even though no prosecutions are pending against the named plaintiffs." The court further stated: "Since Jones was not their agent, however, plaintiffs Grandco Corp. and Festival Theatre could argue that the *Younger* doctrine is not applicable to them, but because of my decision on this issue I would not have to reach that question." We do not think this footnote in the district court opinion amounts to a *find-*

ing that there were no proceedings akin to those against Claude Jones then pending against Grandco's manager.

**9.** Compare *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), and *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975), where a federal plaintiff refrained from violating a statute or ordinance while initiating a federal challenge to its constitutionality. The Court held that in that situation federal declaratory relief is available to that plaintiff.

Recent decisions establish that *Younger's* principles may demand federal restraint in some circumstances where pending state proceedings are civil or even administrative. *Huffman v. Pursue, Ltd., supra* (state-initiated civil nuisance proceedings); *Geiger v. Jenkins*, 401 U.S. 985, 91 S.Ct. 1263, 28 L.Ed.2d 525 (1971), *aff'g mem.* N.D.Ga., 316 F.Supp. 370 (1970) (license revocation proceedings before a state medical board); *Anonymous v. Association of the Bar of City of New York*, 2 Cir., 515 F.2d 427, *cert. denied*, 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975) (state disbarment proceedings); *McCune v. Frank*, 2 Cir., 521 F.2d 1152 (1975) (police department internal disciplinary proceedings).[10] However, these decisions have generally required federal restraint only upon an express finding that the state's interest in its own proceedings is substantial and that those proceedings provide a proper forum for vindication of the federal plaintiff's constitutional claim.[11] In view of these requirements, we conclude that the particular circumstances in this case do not mandate the exercise of federal restraint.

 The pending administrative proceedings to revoke the licenses of the theaters which Festival Theatre operates are governed by Section 101–27 of the Municipal Code, which provides:

The mayor shall have the power to suspend or revoke any license issued under the provisions of this code for good and sufficient cause or if he determines that the licensee shall have violated any of the provisions of this code * * *.

Municipal Code of Chicago ch. 101, § 101–27 (1975). That section further provides for a public hearing with appropriate prior notice to be held by a license commissioner appointed by the mayor. The license commissioner reports his findings to the mayor who then determines whether to revoke the license. The mayor's decision is apparently reviewable in state court on a petition for common law certiorari. *Quinlan and Tyson, Inc. v. City of Evanston*, 25 Ill.App.3d 879, 883, 324 N.E.2d 65, 69 (1975); *People ex rel. Elmore v. Allman*, 382 Ill. 156, 160, 46 N.E.2d 974, 977 (1943).

 While we recognize the municipal interest in regulation of local motion picture theaters for health and safety purposes, we are persuaded in this case that the nature of the administrative proceedings and the limitations on judicial review of those proceedings militate against denying this plaintiff the federal forum ordinarily available for Section 1983 claims. The state proceedings here are not before a court or any established adjudicatory body. Instead, the determination is to be made by the mayor after a hearing before his appointee. State court review of his decision by common law certiorari is a limited review on the record; the court's inquiry is solely whether it appears on the face of the record that the agency had jurisdiction and that its action was legal and supported by evidence. *Nowicki v. Evanston Fair Housing Review Board*, 62 Ill.2d 11, 338 N.E.2d 186 (1975); *People ex rel. Nelson Bros. Storage and Furniture Co. v. Fisher*, 373 Ill. 228, 25 N.E.2d 785 (1940); *Quinlan*, 25 Ill. App.3d 879, 324 N.E.2d at 70.

Furthermore, it is uncertain whether this plaintiff's challenge to the licensing ordinance could be raised in those proceedings. It appears that Festival Theatre is not even a party to the proceeding to revoke the license of the Three Penny Cinema, since that proceeding is brought against the licensee, John Rossen and Cine La Joya Corporation. The record does not indicate whether Festival is a party to proceedings to revoke licenses at its other theaters. *Cf.*

10. *See also Ahrensfeld v. Stephens*, 7 Cir., 528 F.2d 193 (1975) (eminent domain proceedings in state court); *Cousins v. Wigoda*, 7 Cir., 463 F.2d 603 (1972) (private civil litigation between same parties in state court).

11. *Huffman v. Pursue, Ltd.*, 420 U.S. at 604–5, 95 S.Ct. 1200; *McCune v. Frank*, 521 F.2d at 1158. Compare *Gibson v. Berryhill*, 411 U.S. 564, 577, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), where the Court held that federal equitable relief against a state Optometry Board proceeding was not barred under *Younger* because of allegations that the administrative forum was biased and illegally constituted.

n. 4, *supra.* In any event, revocation proceedings are governed by Section 101–27 and provide for revocation for "good and sufficient cause" or for violation of the municipal code. The section which Festival Theatre seeks to challenge is Section 101–5 governing the issuance of municipal licenses, which provides for granting such license only to a "fit and proper" person. While these sections may be read together for some purposes, it is doubtful that Festival Theatre could argue in defense to a proceeding to revoke the license of Cine La Joya Corporation that the ordinance under which Festival Theatre was denied a license is unconstitutional.

Festival Theatre, unlike Grandco and Wabash Books, was not operating in violation of the challenged ordinance, and a grant of its request for federal relief neither disrupts nor impermissibly by-passes any pending state proceedings in which its constitutional claim can be raised and vindicated. Under these circumstances, *Younger* does not preclude a federal court from granting, at a minimum, federal declaratory relief against an unconstitutional statute or ordinance. *Steffel v. Thompson*, 415 U.S. 452, 475, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *Doran v. Salem Inn, Inc.*, 422 U.S. at 931, 95 S.Ct. 2561.

### III.

Defendants' remaining contentions are that plaintiffs lack standing to challenge the licensing ordinance and that the ordinance is constitutional both on its face and as applied. The district court rejected both contentions. It found that Festival Theatre had standing to bring this action and that the challenged ordinance when applied to the licensing of motion picture theaters is an unconstitutional prior restraint on the exercise of First Amendment rights. We agree with the findings of the district court as to Festival Theatre.

■ It is clear that Festival Theatre Corporation has the required "personal stake" in the outcome of its challenge to the facial validity of a municipal ordinance with which it must comply in order to operate its established business. *See Wulp v. Corcoran*, 1 Cir., 454 F.2d 826, 829–30 (1972); *414 Theatre Corp. v. Murphy*, S.D.N.Y., 360 F.Supp. 34, 36–7 (1973), *aff'd*, 2 Cir., 499 F.2d 1155 (1974); *see generally Flast v. Cohen*, 392 U.S. 83, 101, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). The record indicates that the City is actively enforcing its license requirement against motion picture theater operators and that a theater owner operating without such license risks arrest, prosecution and substantial fines. The record further indicates that an application by Festival for the required license was denied. Festival has standing to challenge on its face the ordinance under which that license was denied. This is true even if Festival cannot show that it would not have been denied a license under a proper ordinance drawn without constitutional defects. *Dombrowski v. Pfister*, 380 U.S. at 486, 85 S.Ct. 1116; *Doran v. Salem Inn, Inc.*, 422 U.S. at 933, 95 S.Ct. 2561.

■ It is also clear that Section 101–5 of the Municipal Code is unconstitutional on its face when applied to the licensing of motion picture theaters. Expression through motion pictures is a form of activity protected by the First Amendment. *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 502, 72 S.Ct. 777, 96 L.Ed. 1098 (1952). The state may subject the exercise of First Amendment freedoms to the prior restraint of a license requirement, but only where it provides "narrow, objective, and definite standards to guide the licensing authority." *Shuttlesworth v. Birmingham*, 394 U.S. 147, 151, 89 S.Ct. 935, 938, 22 L.Ed.2d 162 (1969). Section 101–5, in providing that the mayor *may* issue a license upon a *satisfactory* showing that the applicant is a *fit and proper* person, fails to provide the required standards. We agree with the district court's conclusion that "as written with regard to movie theatres, this section of the ordinance gives the mayor such broad discretion to deny a license application that it acts as an unconstitutional prior restraint upon the enjoyment and exercise of First Amendment freedoms." Memorandum of Decision, April 11, 1974 (Unreported). The

district court further found, and we agree, that the state appellate court's decision in *City of Chicago v. Town Underground Theatre, Inc.*, 9 Ill.App.3d 930, 293 N.E.2d 367 (1973), failed to provide a limiting construction with standards to govern the exercise of the mayor's discretion, which might have rendered the ordinance constitutionally acceptable.

We conclude then that Festival Theatre Corporation has standing to challenge the constitutionality of Section 101–5 of Chicago's Municipal Code, that its complaint is not barred under the doctrine of federal equitable restraint, and that Section 101–5 is unconstitutional on its face. We affirm the district court's entry of judgment for Festival Theatre and against the defendants. We further affirm the court's entry of a declaratory judgment that Section 101–5 of the Municipal Code is null and void on its face when applied to Festival Theatre Corporation and to the operation of its motion picture theaters. As both parties agreed in oral argument before our court, the language of the district court's declaratory judgment is to be interpreted as invalidating only that portion of Section 101–5 which confers on the mayor impermissibly broad discretion, and not other provisions in that section which have not been challenged in these proceedings.

■ The district court also entered a permanent injunction against all further and future enforcement of Section 101–5. The Supreme Court, holding that *Younger v. Harris, supra,* does not preclude the grant of declaratory relief in analogous circumstances, declined to decide whether a permanent injunction in these circumstances is also proper under *Younger. Steffel v. Thompson,* 415 U.S. at 475, 94 S.Ct. 1209; *Doran v. Salem Inn, Inc.,* 422 U.S. at 930–1, 95 S.Ct. 2561. Because we believe that the grant of a permanent injunction may involve considerations of comity and federalism not raised by the grant of declaratory relief and because we are persuaded that the declaratory remedy is sufficient in itself in the context of this case, we conclude that

the permanent injunction entered by the district court should be vacated.[12]

The judgment in favor of plaintiffs Grandco Corporation and Wabash Books, Inc., is reversed and remanded with directions to dismiss these actions. The declaratory judgment in favor of plaintiff Festival Theatre Corporation is affirmed. The grant of a permanent injunction is reversed, and, as to Festival Theatre, the cause is remanded with directions to vacate the permanent injunction.

AFFIRMED IN PART.

REVERSED IN PART.

REMANDED WITH DIRECTIONS.

---

**12.** In so doing, we do not decide whether *Younger* principles require this result.