807 F.2d 95
 Sharon COLLINS, Frank Patroff and Sequoia Books, Inc., an
Illinois corporation, d/b/a Denmark II,
Plaintiffs-Appellants,
v.
COUNTY OF KENDALL, ILLINOIS, a body corporate and politic,
et al., Defendants- Appellees.
 No. 85-1947.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 16, 1986.
Decided Dec. 3, 1986.
 
 Glen A. Stanko, Reno O'Byrne & Kepley, P.C., Champaign, Ill., for plaintiffs-appellants.
 James R. Schirott, Schirott & Assoc., P.C., Itasca, Ill., for defendants-appellees.
 Before WOOD, POSNER, and FLAUM, Circuit Judges.
 HARLINGTON WOOD, Jr., Circuit Judge.
 
 
 1
 Plaintiffs appeal dismissal, based on the Younger abstention doctrine, of their suit under 42 U.S.C. Sec. 1983. Plaintiffs claim that the district court erred in dismissing the case because their complaint alleged bad faith prosecution which is an exception to the Younger doctrine. We affirm.
 
 I. FACTS
 
 2
 The plaintiffs--Sequoia Books, Inc., Frank Patroff, and Sharon Collins--are the corporate owner and two employees of the Denmark II, an adult bookstore that sells and exhibits books, magazines, and films of an explicit sexual nature. Plaintiffs brought a section 1983 action alleging that the defendants--the County of Kendall, the State's Attorney, the Sheriff, and the Deputy Sheriff of Kendall County, Illinois--initiated state criminal obscenity charges, a civil nuisance suit, and searches and seizures of their bookstore in order to harass and annoy the plaintiffs with the purpose of forcing the bookstore to close. The plaintiffs claim that such bad faith prosecutions have deprived them of their constitutional rights under the first, fourth, and fourteenth amendments, and therefore seek money damages, and declaratory and injunctive relief from pending criminal charges as well as future actions. The plaintiffs moved for a preliminary injunction and requested a hearing. At the hearing, the defendants, who maintain they have not acted in bad faith but instead have exercised lawful authority in enforcing the state's obscenity laws, made an oral motion to dismiss asserting that the pending state criminal prosecutions required the district court to abstain in accordance with Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).
 
 
 3
 The district court denied the plaintiffs' request to present evidence and denied their motion for a preliminary injunction. The judge ruled that the plaintiffs had not fulfilled the requirements for preliminary injunctive relief. Indeed, he stated that they had not even established a need for an evidentiary hearing on their motion.[1] The plaintiffs moved for reconsideration, and the defendants filed a written motion to dismiss. The district court denied the motion for reconsideration and granted the motion to dismiss, holding that the plaintiffs had failed to allege sufficient facts to support an inference of bad faith or harassing prosecution, an exception to the Younger doctrine. The district court therefore found that injunctive relief was unavailable and that abstention was required in light of the pending state prosecutions against Sequoia Books and Patroff.
 
 
 4
 The defendants first brought misdemeanor and felony obscenity charges against the Denmark II bookstore in April 1980. At that time, the Denmark II was owned by Lawrence Carlock, and Sequoia Books had no interest in it. About two weeks later, a search of the bookstore took place, several items were seized, and felony obscenity charges were filed. Carlock closed the store in October 1981. Following the closure, the criminal charges were dismissed.
 
 
 5
 Sequoia Books bought the Denmark II in June 1982. In November and December of 1982, and again in March 1983, misdemeanor obscenity charges were filed against several bookstore employees regarding material on sale at the bookstore. In March, May, and June of 1983, and in January and October of 1984, the defendants conducted searches of the Denmark II and seized many items.[2] Following these searches, misdemeanor charges were brought against other Denmark II employees. The district court found that "34 state criminal prosecutions were initiated against the Plaintiffs. Of these, at least nine remain pending, three resulted in convictions, and in three Plaintiffs were found not guilty."
 
 II. DISCUSSION
 
 6
 In Younger, the Supreme Court held that federal courts should refrain from enjoining state criminal prosecutions pending when the federal suit was filed, in accord with traditional principles of equity, comity, and federalism.[3] Younger v. Harris, 401 U.S. 37, 53, 91 S.Ct. 746, 754, 27 L.Ed.2d 669 (1971). In Huffman v. Pursue, Ltd., 420 U.S. 592, 607, 95 S.Ct. 1200, 1209, 43 L.Ed.2d 482 (1975), the Court held that Younger also applies to state civil nuisance proceedings. Bad faith or harassing prosecution, however, is an exception to the Younger doctrine.[4] Huffman, 420 U.S. at 611, 95 S.Ct. at 1211. " '[A] showing of a bad faith [prosecution] is equivalent to a showing of irreparable injury for purposes of the comity restraints defined in Younger.' " Wilson v. Thompson, 593 F.2d 1375, 1382 (5th Cir.1979) (quoting Shaw v. Garrison, 467 F.2d 113, 120 (5th Cir.), cert. denied, 409 U.S. 1024, 93 S.Ct. 467, 34 L.Ed.2d 317 (1972)). The harm posed by bad faith prosecution is both immediate and great,[5] and defending against the state proceedings would not be an adequate remedy at law because it would not ensure protection of the plaintiff's federal constitutional rights. Younger, 401 U.S. at 46, 91 S.Ct. at 751. See Juidice v. Vail, 430 U.S. 327, 337, 97 S.Ct. 1211, 1218, 51 L.Ed.2d 376 (1977).
 
 
 7
 A plaintiff asserting bad faith prosecution as an exception to Younger abstention must allege specific facts to support an inference of bad faith. "The Younger rule, as applied in Hicks [v. Miranda, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975) ], requires more than a mere allegation and more than a 'conclusory' finding to bring a case within the harassment exception." Grandco Corp. v. Rochford, 536 F.2d 197, 203 (7th Cir.1976). This specific evidence must show that state prosecution "was brought in bad faith for the purpose of retaliating for or deterring the exercise of constitutionally protected rights." Wilson, 593 F.2d at 1383.
 
 
 8
 In ruling upon the defendants' motion to dismiss here, the district court made the following findings:
 
 
 9
 The Plaintiffs allege three activities by state officials as the basis for its [sic] allegations of bad faith: multiple prosecutions, several of which have been dismissed or have resulted in acquittal, a number of searches of the bookstore and seizures of its property, and the filing of a civil nuisance suit. As had already been stated of the 34 state criminal prosecutions brought against Plaintiffs based on obscenity charges, three have led to acquittals, three have led to convictions, a number have been dismissed, and at least nine are pending. Additionally, the Denmark II has been searched, pursuant to valid warrants, five times during an 18 month period. Many items were seized during these searches and misdemeanor obscenity charges occasionally followed the searches. A civil nuisance suit has also been filed and is pending.
 
 
 10
 Collins v. County of Kendall, No. 84 C 10011, at 5 (N.D.Ill. May 28, 1985). The district court determined that the multiple prosecutions alone did not establish bad faith, that the searches and seizures were pursuant to valid warrants and had been upheld by this court, that the defendants successfully prosecuted the plaintiffs on three obscenity charges,[6] and that the civil nuisance suit did not raise the otherwise lawful law enforcement activities to the level of bad faith prosecution.
 
 
 11
 In reviewing a Rule 12(b)(6) dismissal, we take all allegations in the complaint as true. Kugler v. Helfant, 421 U.S. 117, 125, 95 S.Ct. 1524, 1531, 44 L.Ed.2d 15 (1975); United Independent Flight Officers, Inc. v. United Air Lines, Inc., 756 F.2d 1262, 1264 (7th Cir.1985); Haroco, Inc. v. American National Bank & Trust Co., 747 F.2d 384, 385 (7th Cir.1984), aff'd, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). In addition, we view all allegations in the light most favorable to the plaintiff. Wilson v. Harris Trust & Savings Bank, 777 F.2d 1246, 1247 (7th Cir.1985); Haroco, 747 F.2d at 385.
 
 
 12
 After reviewing the record, and based upon the principles set forth above, we agree with the district court that the plaintiffs have failed to set forth facts supporting an inference of bad faith prosecution or harassment. Instituting approximately thirty criminal prosecutions over a two-year period does not constitute bad faith or harassment in and of itself. See Grandco Corp. v. Rochford, 536 F.2d 197, 203 (7th Cir.1976) (court "not persuaded that evidence of multiple prosecutions is sufficient by itself to support [the] necessary inference" of bad faith and harassment); Sandquist v. Pitchess, 332 F.Supp. 171, 179 (C.D.Cal.1971) ("Where one distributes or exhibits a great number of different publications or films, each of which is colorably obscene, he assumes a risk of multiple prosecutions and the number of arrests and prosecutions he encounters cannot be determinative of whether bad-faith harassment has occurred."). One-third of these cases were dismissed, but the Appellate Court of Illinois reversed the dismissals and remanded for further proceedings, People v. Bailey, 125 Ill.App.3d 346, 80 Ill.Dec. 633, 465 N.E.2d 979 (1984), and the Supreme Court of the United States denied certiorari, Bailey v. Illinois, 471 U.S. 1057, 105 S.Ct. 2123, 85 L.Ed.2d 487 (1985). In eight cases, six of which are against the president of Sequoia Books, service of the arrest warrant could not be obtained as the defendants apparently could not be located. Of the remaining twelve cases, three resulted in directed verdicts of not guilty, in one case the prosecutor withdrew the charges, and the prosecutor has indicated that he will do the same in another case. One case was still in the motions stage, one was set for trial, and four cases had been filed just two weeks before the plaintiffs filed their federal suit. In addition, based upon correspondence from both parties, the district court was aware when it ruled upon the dismissal motion that the defendants successfully prosecuted Sequoia Books on three counts of selling obscene magazines.
 
 
 13
 Plaintiffs acknowledge that the district judge was aware of this conviction, but characterize the conviction as evidence of bad faith also. Plaintiffs contend that the filing of their suit in federal court spurred the defendants to push the cases through the state court system to justify the searches and the prosecutions. Plaintiffs conclude that "this conduct just as easily can be read to show that bad faith existed at the time the federal complaint was filed." We disagree with the plaintiffs' conclusion. The docket sheets do not indicate any undue delay in processing these cases through the state's criminal courts. The plaintiffs apparently were satisfied with the pace as they made no attempt to expedite the matter.
 
 
 14
 Plaintiffs cite Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), and a Ninth Circuit case, Krahm v. Graham, 461 F.2d 703 (9th Cir.1972), as support for their argument that their complaint made out a sufficient showing of bad faith by the defendants to avoid the Younger abstention doctrine. The facts of both cases, however, differ significantly from those in the case before us. In Dombrowski, the Supreme Court found official bad faith and harassment in the state criminal prosecution of the Southern Conference Educational Fund, Inc. (SCEF), a civil rights organization. State officials threatened to prosecute the SCEF and its director for alleged violations of the state Subversive Activities and Communist Control Law and the Communist Propaganda Control Law even after a state judge had quashed arrest warrants and suppressed evidence seized in an illegal raid of organization offices. Dombrowski, 380 U.S. at 487-88, 85 S.Ct. at 1121-22. The SCEF and others were indicted under the Subversive Activities and Communist Control Law, and officials allegedly threatened to prosecute them under other state laws as well. Id. at 489, 85 S.Ct. at 1122. The seizure of documents and records had "paralyzed operations and threatened exposure of the identity of adherents to a locally unpopular cause." Id. at 488-89, 85 S.Ct. at 1122. In addition, state officials had repeatedly announced that the SCEF was a subversive or Communist-front organization whose members must register or be prosecuted under state statutes, which allegedly had the effect of discouraging new membership and contributors. Id. at 488, 85 S.Ct. at 1127.
 
 
 15
 In Krahm, the Ninth Circuit upheld the district judge's grant of an injunction against harassment of the plaintiffs through bad faith prosecutions of Arizona's anti-obscenity statute. The Krahm court emphasized the number of prosecutions pending when the federal suit was filed--over 100, with each plaintiff facing between 10 and 20 charges. None of the cases in Krahm resulted in convictions. The prosecutions were part of an "anti-pornography campaign ... spearheaded by the mayor, [one of the three defendants in the federal suit,] with announcements on television and to the newspapers." Id. at 705. As part of this "campaign," the mayor had anti-obscenity petitions circulated to 50,000 people in Phoenix, Arizona. The mayor indicated publicly that the petitions were meant to influence the community so that jurors would more likely convict at trial and to make clear to the city magistrates, who could be fired at will by the mayor and city council, how the community felt on this issue. The mayor also told the newspapers that the plaintiffs were involved with the Mafia, and made several other statements for which he had no basis. In conjunction with these public announcements, the police conducted about a dozen illegal searches and seizures; and the police continued such seizures despite a state court order declaring the method of seizure illegal, until the federal district court issued an injunction.
 
 
 16
 In this case, there was no concerted publicity campaign aimed at putting the plaintiffs out of business for exercising their first amendment rights. Plaintiffs point to the filing of criminal charges against the previous owner which were dismissed after the owner closed the bookstore. However, the dismissal of the charges does not indicate a pattern of bad faith prosecution, but rather a realistic allocation of resources. The closing of the bookstore ensured that the offensive materials would not be sold and therefore continued prosecution would not serve any purpose. This does not represent a violation of the plaintiffs' constitutional rights, as the prosecutor necessarily must have the discretion to make such decisions in view of the limited resources available to him. Furthermore, all the searches in this case were conducted pursuant to judicially approved search warrants, and the search methods were subsequently approved by this court in Sequoia Books, Inc. v. McDonald, 725 F.2d 1091 (7th Cir.), cert. denied, 469 U.S. 817, 105 S.Ct. 83, 83 L.Ed.2d 31 (1984). See Hicks v. Miranda, 422 U.S. 332, 351, 95 S.Ct. 2281, 2292, 45 L.Ed.2d 223 (1975) (search and seizure based on valid judicial warrant cannot lead to finding of bad faith and harassment).
 
 
 17
 We do not mean to insinuate that plaintiffs must allege the type of extreme factual situation present in Krahm to show bad faith and harassment. Krahm is distinguishable not only on the basis of its unusual facts, but also because, as we noted in Grandco Corp. v. Rochford, 536 F.2d 197, 204 (7th Cir.1976), the multiple prosecutions in Krahm were consistently unsuccessful. Id. at 204. The multiple prosecutions in Dombrowski were also characterized by failure. As we stated in Grandco, "state attempts [in Dombrowski ] to prosecute the federal plaintiffs had been uniformly unsuccessful. Yet state officials threatened to initiate new prosecutions and to conduct further searches and arrests even though earlier arrest and search warrants had been summarily vacated." Id. at 203 (emphasis in original).
 
 
 18
 In the instant case, defendants have successfully prosecuted the plaintiffs on three obscenity charges. A case had been set for trial and one case was still in the motions stage when the district court ruled on the motion for dismissal. The facts alleged by the plaintiffs in their complaint do not indicate that the "state officials are using or threatening to use prosecutions, regardless of their outcome, as instrumentalities for the suppression of speech." Sheridan v. Garrison, 415 F.2d 699, 706 (5th Cir.1969), cert. denied, 396 U.S. 1040, 90 S.Ct. 685, 24 L.Ed.2d 685 (1970) (emphasis in original). Nor do the plaintiffs' allegations amount to a showing that "the statute was enforced against them with no expectation of convictions but only to discourage exercise of protected rights." Cameron v. Johnson, 390 U.S. 611, 621, 88 S.Ct. 1335, 1341, 20 L.Ed.2d 182 (1968). The district court therefore did not err in dismissing the case as the plaintiffs' complaint did not allege facts amounting to bad faith prosecution.
 
 
 19
 Plaintiff Sharon Collins argues that she should have been considered separately from the other two plaintiffs because there were no cases pending in state court against her. Collins argues that the Younger principles do not apply in her case and that therefore injunctive relief should be available. The plaintiff relies upon Doran v. Salem Inn, Inc., 422 U.S. 922, 928-29, 95 S.Ct. 2561, 2566-67, 45 L.Ed.2d 648 (1975), in which the Supreme Court treated each respondent separately, stating: "We do not agree with the Court of Appeals ... that all three plaintiffs should automatically be thrown into the same hopper for Younger purposes." The Court also stated that "[t]here plainly may be some circumstances in which legally distinct parties are so closely related that they should all be subject to the Younger considerations which govern any one of them." Id. at 928, 95 S.Ct. at 2566.
 
 
 20
 Although the Doran Court concluded that it was not faced with such a case, considering the lack of common ownership, control, and management of the three businesses, the relationship between the plaintiffs here is sufficient to warrant similar treatment under Younger. We are not faced with three separate and distinct businesses whose only connections were having the same attorney and conducting similar business activities. We have instead three plaintiffs who are all related to the same business entity, the Denmark II bookstore. Sharon Collins and Frank Patroff are both employees of the bookstore which is owned by the third plaintiff, Sequoia Books. All three plaintiffs thus share the same interest in contesting in the state litigation the classification of the magazines as obscene, and Patroff and Sequoia Books could adequately represent that interest in the state proceeding. See W.C.M. Window Co. v. Bernardi, 730 F.2d 486, 492 (7th Cir.1984). Consequently, the district court did not err in not considering Collins separately, and the abstention discussion above applies with equal force to her.
 
 
 21
 Furthermore, Collins put herself in the same "hopper" as the other two plaintiffs in the bad faith prosecution argument. Collins, whose criminal charges ended in a jury verdict of not guilty, does not single herself out in the complaint and argue that the defendants established a pattern of bad faith prosecutions and harassment against her alone. Collins in essence asserts that the federal court should consider the facts as a whole when assessing the bad faith claim, but yet ignore the close relationship between the plaintiffs when applying the Younger doctrine. These two analyses are intertwined, however, just as the interests of Collins in this case are inseparable from those of Patroff and Sequoia Books.
 
 III. CONCLUSION
 
 22
 The district court did not err in concluding that the facts alleged in the plaintiffs' complaint do not constitute bad faith prosecution or harassment. As no exception to the Younger doctrine applies in this case, the district court properly abstained from enjoining the pending state proceedings. Furthermore, the district court properly considered all three plaintiffs together because their interests are so closely related. We are not holding, however, that this continuing and developing situation may not later justify further litigation by plaintiffs seeking to have similar claims reconsidered under substantially changed circumstances. Therefore, the district court's decision is
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 Plaintiffs argue that the case should be remanded for a hearing to allow them to call the defendants as witnesses to prove their bad faith. The plaintiffs, however, never renewed their request to present evidence after the hearing turned into an oral argument about the defendants' motion to dismiss. Instead the plaintiffs argued against the dismissal motion and never requested that the defendants testify as scheduled. It was well within the judge's discretion to decide that the plaintiffs' motion could be decided upon the briefs and oral argument without an evidentiary hearing
 The plaintiffs suggest nothing factually specific that they sought to elicit from the defendants, except in a conclusory way. Plaintiffs are seeking to fish in a dry pond. The record of the state prosecutions is an adequate basis to leave state court business to state courts, at least at this time.
 The plaintiffs also complain that the court allowed one of the defendants, State's Attorney Ingemunson, to "interject himself in the proceedings, not as a called witness, but an advocate for himself and the other defendants without facing the prospect of cross-examination." This characterization, however, is inaccurate. At the trial court's request, Ingemunson clarified the status of cases pending in state court against the plaintiffs. At the time, the plaintiffs did not object to this colloquy between the judge and Ingemunson. In fact, plaintiffs' counsel agreed with Ingemunson's explanation of the status of the cases. Indeed, both parties agreed to stipulate to the number of cases pending against the plaintiffs. Ingemunson also addressed the court at the end of the hearing, but there was no impropriety as the court had already ruled upon the plaintiffs' motion.
 
 
 [2]
 In their brief, plaintiffs refer to the prosecution not bringing charges for every magazine seized and yet keeping all the magazines as evidence. At the preliminary injunction hearing, however, plaintiffs' attorney stated that the seized inventory had been "resupplied" and that the bookstore therefore was in operation
 
 
 [3]
 As we have earlier noted:
 The Younger doctrine is based on, and its contours established by, two principles of equity jurisprudence. The first is that an injunction is an extraordinary remedy, rarely available as a matter of right and never more extraordinary than when, if granted, it would prevent government officials from proceeding under a statute founded on important state interests against a violator of the statute; such an injunction would offend comity and federalism. The second principle is that an injunction will not be issued when the plaintiff has an adequate remedy at law, which he does if he can assert the ground on which he seeks an injunction as a defense to the very proceeding that the injunction would put a stop to.
 W.C.M. Window Co. v. Bernardi, 730 F.2d 486, 490 (7th Cir.1984).
 
 
 [4]
 The two other exceptions to Younger abstention are: (1) if the state court proceeding would not afford the plaintiff an opportunity to raise his constitutional claims; and (2) if a statute is "flagrantly and patently violative of express constitutional prohibitions." Younger, 401 U.S. at 49, 53, 91 S.Ct. at 753, 754. See Sekerez v. Supreme Court of Indiana, 685 F.2d 202, 205 (7th Cir.1982)
 
 
 [5]
 As the Fifth Circuit has stated:
 The Younger doctrine presumes that "the only constitutional issue at stake is the validity of the challenged state law--that being prosecuted under an arguably (or actually) invalid law is not itself a violation." Developments in the Law--Section 1983 and Federalism, 90 Harv.L.Rev. 1133, 1286 (1977) (emphasis in original). That presumption does not obtain when the prosecution itself effects the constitutional violation ...
 When a significant chilling effect on free speech is created by a bad faith prosecution, the prosecution will thus as a matter of law cause irreparable injury regardless of its outcome, and the federal courts cannot abstain from issuing an injunction.
 [Sheridan v. Garrison ], 415 F.2d [699,] 706 [ (5th Cir.1969), cert. denied, 396 U.S. 1040, 90 S.Ct. 685, 24 L.Ed.2d 685 (1970) ] (emphasis in original).
 With respect to the interests of the State, it by definition does not have any legitimate interest in pursuing a bad faith prosecution brought to retaliate for or to deter the exercise of constitutionally protected rights. Perhaps the most important comity rationale of Younger deference--that of respect for the State's legitimate pursuit of its substantive interests, see Younger, 401 U.S. at 51-52, 91 S.Ct. at 754; Trainor v. Hernandez, (1977), 431 U.S. 434, 441, 97 S.Ct. 1911, 1916, 52 L.Ed.2d 486--is therefore inapplicable.
 Wilson v. Thompson, 593 F.2d 1375, 1382-83 (5th Cir.1979) (footnote omitted).
 
 
 [6]
 Plaintiffs also complain that the district court permitted the defendants to make off-the-record communications with the court by letter and then interpreted that information in the light most favorable to the defendants. Plaintiffs received copies of the correspondence and thereafter responded by letter without objection. Plaintiffs now object to "[t]he reporting of three convictions and a mistrial in cases tried during the winter and spring of 1985." The defendants apprised the court by letter of these case dispositions, a conviction and a mistrial, which occurred after the motion to dismiss was filed. The district court did not err in considering these undisputed matters appearing on the public record. The district court did not rely on the mistrial in its order