AMERICAN NATIONAL BANK OF CHICAGO, as Trustee under Trust No. 204274–09, and LP Ram, Inc., an Illinois corporation, doing business as Southwest Book & Video, Plaintiffs,

v.

Lawrence W. PARKMAN, Zoning Administrator of the City of Chicago, and City of Chicago, a municipal corporation, Defendants.

No. 88 C 6145.

United States District Court, N.D. Illinois, E.D.

Oct. 24, 1988.

Michael J. Kralovec, William H. Hrabak Jr., Feiwell Galper & Lasky, Edward M. Genson, Genson Steinbeck & Gillespie, Chicago, Ill., for plaintiffs.

Jonathan P. Siner, Asst. Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiffs American National Bank of Chicago ("Bank") and LP Ram, Inc. bring this action under 42 U.S.C. § 1983 and 28 U.S.C. § 2201, seeking damages and declaratory and injunctive relief arising out of defendants Lawrence Parkman and the City of Chicago's ("City") enforcement of an adult bookstore zoning ordinance. Defendants have filed a motion to dismiss which, for the reasons set forth in this opinion, we grant.

## I.[1]

LP Ram owns and operates Southwest Book & Video ("Southwest Video") which sells books, magazines, video tapes and related items. Southwest Video is located on a parcel of land owned by the Bank and zoned as a B2-1 district which, under Chapters 194A and 194C of the Municipal Code of Chicago, may not contain adult bookstores. The Code defines an adult bookstore as

> an establishment having as a substantial or significant portion of its stock in

trade, books, magazines, files for sale or viewing on premises by use of motion picture devices or any other coin-operated ?? and other periodicals which are distinguished or characterized by their emphasis on matters depicting, describing or relating to "specified sexual activities," or "specified anatomical areas," or an establishment with a segment or section devoted to the sale or display of such material. Municipal Code of Chicago ch. 194A, § 3.2 (1987).

The City, through Parkman, its Zoning Administrator, interprets "substantial or significant portion" to mean over fifty percent of the stock. The ordinance further provides that violators of this provision are subject to fines of from fifty to two hundred dollars for each day of noncompliance.[2]

Some of the items sold at Southwest Video are properly categorized as non-obscene sexually explicit materials within the meaning of the ordinance, but plaintiffs allege that such items do not constitute a "substantial or significant portion of its stock" and that the store does not have a "segment or section devoted to the sale or display" of those items. Nevertheless, on June 20, 1988, City police entered Southwest Video, arrested the store clerk and issued twenty-six citations for violations of the zoning code. A judge in the Circuit Court of Cook County later dismissed eight of the citations, and the City voluntarily dismissed the remaining eighteen.[3]

On June 23, Parkman issued a zoning violation notification and ordered the plaintiffs to appear before him to show cause why he should not issue a Cease and Desist

---

1. Unless noted otherwise, plaintiffs' complaint sets forth the following allegations which, along with all reasonable inferences therefrom, we take as true for purposes of this motion to dismiss. *Meriwether v. Faulkner,* 821 F.2d 408, 410 (7th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987).

2. The ordinance provides in pertinent part:
   A person who violates, disobeys, omits, neglects, or refuses to comply with or resists the enforcement of any of the provisions of this comprehensive amendment shall be fined not less than fifty dollars nor more than two hundred dollars. Each day such a violation

or failure to comply is permitted to exist after notification thereof shall constitute a separate offense. Municipal Code of Chicago ch. 194A, § 11.13.

3. Plaintiffs allege this fact not in their complaint but in their response to the motion to dismiss. Plaintiffs cannot survive a motion to dismiss by evidence presented or factual allegations made outside of the complaint. *Beam v. IPCO Corp.,* 838 F.2d 242, 244 (7th Cir.1988). However, we will presume plaintiffs properly alleged this fact in order to forestall any attempt to amend the complaint solely on this basis.

Order for continuing violations of the adult bookstore zoning ordinance and why the City should not initiate an action in state court seeking appropriate fines. Parkman set a July 19 hearing date but then cancelled it and issued the Cease and Desist Order without providing plaintiffs with an opportunity to prove that they were not in violation of the ordinance. On July 27, Chicago filed a zoning enforcement action, currently pending, in the Municipal Department of the Circuit Court of Cook County seeking injunctive relief to enforce the Cease and Desist Order as well as fines of two hundred dollars a day. *Chicago v. L–P Ram, Inc.*, No. 88M1–402189.

On July 19, eight days before the City filed its enforcement action in state court, plaintiffs filed this five-count action charging that Southwest Video is not an adult bookstore within the meaning of the ordinance and that the ordinance is vague, overbroad and allows for the prior restraint of speech in violation of the Fourteenth Amendment. Plaintiffs seek declaratory, injunctive and compensatory relief. In their motion to dismiss, defendants contend that this Court should abstain from exercising jurisdiction under any of the three abstention doctrines established in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Railroad Commission v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); and *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). We decline to exercise jurisdiction under *Younger v. Harris*, and accordingly dismiss without deciding whether abstention is appropriate under either *Pullman* or *Colorado River*.

## II.

In *Younger v. Harris*, the Supreme Court significantly limited the power of the federal courts to interfere with state judicial proceedings, holding that a district court may not enjoin a pending state criminal proceeding even if the state is seeking to enforce through that prosecution an unconstitutional law.[4] Through this limitation on federal judicial power, the Court sought to effectuate "the notion of 'comity,' that is, a proper respect for state functions ... and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate function in their separate ways." 401 U.S. at 44, 91 S.Ct. at 750, 27 L.Ed.2d 669. The Court also views this doctrine as providing the state courts with an opportunity to interpret state laws in such a way as to avoid any conflict with federal law and thereby obviate the need for federal intervention. *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 1526, 95 L.Ed.2d 1 (1987). The implicit assumption that underlies *Younger* abstention is a faith in the state courts that they will fulfill their duty to enforce the laws and constitution of the United States even at the expense of conflicting state law.

The Court has recognized that in some situations such faith is misplaced. The state courts are after all an instrumentality of the state, not the federal government, and thus are subject to state-imposed restraints on their power which may include limitations on their ability to adequately protect citizens' federal rights. Thus, the Court has held that notwithstanding the *Younger* doctrine, a federal court may enjoin state judicial proceedings when the state court does not provide the individual with a full and fair opportunity to present all federal challenges to the state law. *Gibson v. Berryhill*, 411 U.S. 564, 577, 93 S.Ct. 1689, 1697, 36 L.Ed.2d 488 (1973). Similarly, the state court's ability to act in any given proceedings is usually constrained by the posture of the litigants, and a well-intentioned state court may be unable to protect an individual's federal

---

**4.** The Court has since expanded the reach of this doctrine to warrant abstention from enjoining any state civil proceedings that implicate important state interests. *E.g. Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (civil judgment enforcement proceedings); *Middlesex County Ethics Committee v. Garden State Bar Asso.*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (attorney disciplinary proceedings); *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (civil contempt proceedings).

rights as a result of prosecutorial or extra-judicial machinations. Thus, a federal court may enjoin proceedings if it is established that "the state proceeding is motivated by a desire to harass or is conducted in bad faith." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611, 95 S.Ct. 1200, 1218, 43 L.Ed.2d 482 (1975); *Collins v. County of Kendall*, 807 F.2d 95, 98 n. 5 (7th Cir.1986), *cert. denied,* ⎯ U.S. ⎯, 107 S.Ct. 3228, 97 L.Ed.2d 734 (1987). Finally, if a state law is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it," a federal court should enjoin its enforcement and not subject the individual to the risk, while perhaps only slight, that vindication of federal rights will not come until appeal from the state's highest court to the United States Supreme Court. *Younger*, 401 U.S. at 53–54, 91 S.Ct. at 755, 27 L.Ed.2d 669.

■ Plaintiffs concede, as they must, that the *Younger* doctrine applies here. There are pending state proceedings, the essential prerequisite to application of the doctrine, *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974),[5] and plaintiffs seek through declaratory and injunctive relief to enjoin the City from enforcing state law in those proceedings.[6] The City seeks to enforce an ordinance that provides for fines, a punitive measure, in the event the ordinance is violated. When proceedings are criminal in nature, the state interests at stake are sufficiently significant to warrant application of *Younger* even though those proceedings are technically civil. *Brunken v. Lance*, 807 F.2d 1325, 1330 (7th Cir.1986). *See, e.g., Jacobson v. Village of Northbrook*, 824 F.2d 567 (7th Cir.1987) (applying *Younger* to civil proceedings in which the state seeks to enforce a motor vehicle registration sticker).

■ Plaintiffs argue that the following allegations support a finding of state harassment and bad faith prosecution which warrant federal intervention in the pending state proceedings: City police raided Southwest Video and issued twenty-six citations, all since dismissed, and Parkman issued a Cease and Desist Order without first providing plaintiffs with an opportunity to present evidence that Southwest Video is not an adult bookstore as defined in the ordinance.

The case law demonstrates that these allegations, if true, do not rise to the level of harassment and bad faith that justifies our exercising jurisdiction despite the *Younger* doctrine. Every situation is unique, but a number of cases provide some guidance. In *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), the leading Supreme Court decision in this area, members of a civil rights organization sought to enjoin enforcement of a Louisiana law banning subversive activities and the dissemination of "communist propaganda." The Court found the following allegations sufficient to warrant federal interference in pending state proceedings: The state seized enough documents to paralyze plaintiffs' operations, the state threatened to prosecute even after a state court held that all of the evidence was illegally seized, and state officials repeatedly labelled plaintiffs subversives and announced their intention to prosecute them. *Id.*, 380 U.S. at 487–89, 85 S.Ct. at 1121–22, 14 L.Ed.2d 22. Similarly, in *Krahm v. Graham*, 461 F.2d 703 (9th Cir.1972), the Ninth Circuit found the following factual

---

5. That the City initiated proceedings after plaintiffs filed this action is of no consequence. As long as no substantial issues have as yet been decided here, the *Younger* doctrine applies. *Hicks v. Miranda*, 422 U.S. 332, 349, 95 S.Ct. 2281, 2292, 45 L.Ed.2d 223 (1975). "The application of the *Younger* doctrine does not depend on who gets to which courthouse first." *National Metalcrafters v. McNeil*, 784 F.2d 817, 822 (7th Cir.1986).

6. That the plaintiffs have an added claim for damages under § 1983 does not change the nature of this lawsuit for purposes of the *Younger* doctrine. While the Supreme Court has not as yet decided the applicability of *Younger* to a § 1983 action, *Juidice*, 430 U.S. at 339 n. 16, 97 S.Ct. at 1219 n. 16, 51 L.Ed.2d 376, the Seventh Circuit has held that attendant damages claims should be dismissed when *Younger* mandates dismissal of the claims for declaratory and injunctive relief. *Jacobson v. Village of Northbrook*, 824 F.2d 567, 569 (7th Cir.1987).

findings sufficient to warrant enjoining state obscenity proceedings: eleven illegal searches, the institution of over one hundred prosecutions for violation of the obscenity statute, the government's public announcements of these prosecutions as well as unsubstantiated charges that plaintiffs were involved in organized crime, and the circulation of anti-obscenity petitions by a city official with the express intent to influence potential jurors. *See also Lewellen v. Raff,* 843 F.2d 1103, 1109–13 (8th Cir.1988) (affirming district court's finding of bad faith and harassment based on direct testimony as well as circumstantial evidence of the timing of the state court proceedings and plaintiff's treatment in state court).

Two Seventh Circuit decisions establish the types of allegations that cannot by themselves support a finding that the state is enforcing a statute in bad faith or for purposes of harassment. In *Grandco Corp. v. Rochford,* 536 F.2d 197 (7th Cir. 1976), the Seventh Circuit stated that evidence of multiple prosecutions are insufficient to justify enjoining state proceedings, even if accompanied by isolated instances of illegal arrests and seizures. In *Collins v. County of Kendall,* 807 F.2d 95 (7th Cir.1986), the Court found that in the absence of any allegations of illegal searches and seizures, undue delay in state proceedings or a campaign by public officials to put plaintiffs out of business, thirty criminal prosecutions on state criminal obscenity charges over a two-year period could not support a finding of bad faith or harassment. That the state voluntarily dismissed some of the charges "does not indicate a pattern of bad faith prosecution, but rather a realistic allocation of resources." *Id.* at 101.

Plaintiffs have alleged no facts that could support a finding that the actions of the City or the pending lawsuit in the Municipal Division have rendered Southwest Video unable to operate. There is no allegation that City police seized anything from Southwest Video, let alone illegally, that City officials have launched a publicity campaign to hurt Southwest Video's business or affect the outcome of the state court proceedings, or that the City has in any way delayed those proceedings. Plain-

tiffs allege that the City filed twenty-six citations against the plaintiffs for violations of the zoning ordinance. Nothing in the complaint indicates that these citations were without merit or, more importantly, were issued solely to harass. As the Seventh Circuit indicated in *Collins,* that the City voluntarily dismissed eighteen of those citations does not support an inference of harassment. The City dismissed them at the first court hearing, before plaintiffs had to incur any significant expense or time in defending against the charges. Further, the City dismissed them after filing an action in the Municipal Division to enforce the Cease and Desist Order, suggesting not a campaign of harassment but rather a reallocation of resources devoted to enforcing the ordinance. Finally, plaintiffs have alleged no facts demonstrating that Parkman's decision to forego a hearing and directly issue the Cease and Desist Order was beyond his power or done with an intent to harass.

In short, there is nothing in the complaint to suggest bad faith or harassment by the City or that plaintiffs cannot operate Southwest Video unhindered pending resolution of the issues in the Municipal Division. State law allows plaintiffs to maintain their constitutional challenges to the zoning ordinance in the Municipal Division of the Circuit Court, *Foster Kleiser v. Schaumburg,* 126 Ill.App.3d 836, 82 Ill. Dec. 61, 467 N.E.2d 1134, 1137–38 (1st Dist. 1984), and we must presume in the absence of any allegation to the contrary that the state court will fully and fairly hear those challenges. In such a situation, *Younger* dictates that we refrain from exercising jurisdiction over any action in which plaintiffs seek to interfere with those proceedings.

III.

Due to the pendency of proceedings in the Municipal Division of the Circuit Court of Cook County, we grant defendants' motion to dismiss. It is so ordered.