Maurice A. NERNBERG and Nancy N. Nernberg, Plaintiffs,

v.

CITY OF PITTSBURGH, Dominic Cimino, Ronald Graziano and Richard Bruce, Defendants.

No. Civ.A. 98–2016.

United States District Court, W.D. Pennsylvania.

April 30, 1999.

Maurice A. Nernberg, Jr., Pittsburgh, PA, for plaintiff.

Randall C. Marshall, Assistant City Solicitor, City of Pittsburgh Law Dept., Pittsburgh, PA, for defendant.

## OPINION

ZIEGLER, Chief Judge.

Pending before the court is the motion (doc. no. 11) of defendants, City of Pittsburgh, Dominic Cimino, Ronald Graziano, and Richard Bruce (collectively "city defendants"), to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted, and the motion (doc. no. 8) of plaintiffs, Maurice and Nancy Nernberg ("the Nernbergs"), for a temporary restraining order or a preliminary injunction. The Nernbergs filed suit against the city defendants under 42 U.S.C. § 1983 seeking injunctive relief from administrative and criminal proceedings regarding plaintiffs' alleged violations of the City Building Code, equitable relief requiring the City to amend its Building Code, and money damages.

Plaintiffs claim that they are victims of selective prosecution. More specifically, the Nernbergs contend that the City is maliciously retaliating against them because (1) "one of the Plaintiffs is counsel for parties" who have sued and obtained large verdicts against the City; and (2) the City recently filed a criminal complaint against the Nernbergs for failure to pay certain taxes and a city magistrate dismissed the charges. Defendants have moved to dismiss plaintiffs' complaint for failure to state a claim under section 1983.

## FACTUAL BACKGROUND

The Nernbergs allege that:

from early November through December of 1998, ... [defendants] Richard Bruce, Dominic Cimino and Ronald Graziano, issued or caused to [be] issue[d] a series of citations against the Nernbergs, relating to alleged building violations. There are a total of seventeen (17) citations. Each is for either a minor, insignificant or non existent violation.

Pls.' Compl. at ¶ 4. Plaintiffs maintain that the City unlawfully issued building code citations to harass plaintiffs in retaliation for the dismissal of the City's criminal charges against plaintiffs and for plaintiff's successful representation of other parties in lawsuits against the City. See Pls.' Br. in Opp. to Mot. to Dismiss at pp. 4–5. The Nernbergs also maintain that the cost of obtaining judicial review of the citations would be approximately $2000 and that this fact illustrates irreparable harm.

Defendants assert that, on March 24, 1999, a Pittsburgh Housing Court Magistrate held a hearing regarding 16 of the building code citations against the Nernbergs, resulting in "8 findings of guilty, 5 dismissals, 1 dismissal with the right of the inspector to re-file under the correct code section, 1 continuation for 30 days, and 1 withdrawal by the City." Defs.' Resp. to Pls.' Ltr. at p. 1. Defendants allege that plaintiffs have a right to appeal the convictions within thirty days to the Court of Common Pleas of Allegheny County for a trial *de novo*. *Id.*

## DISCUSSION

On a motion to dismiss, we must view the allegations of the complaint and reasonable inferences as true. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Melikian v. Corradetti,* 791 F.2d 274, 276 (3d Cir.1986). A motion to dismiss cannot be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). If it appears that the facts alleged in the complaint, even if true, fail to support the plaintiff's claim, the court may grant a

motion to dismiss. *Ransom v. Marazzo,* 848 F.2d 398, 401 (3d Cir.1988).

### A. Younger Abstention

In the landmark case of *Younger v. Harris,* the Supreme Court held that a federal court should abstain from interfering in a pending state court criminal proceeding when the moving party has an adequate remedy at law and when the state proceeding involves important state interests. 401 U.S. 37, 53–54, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *Younger* abstention applies equally to pending state court civil cases and administrative proceedings. *See Pennzoil Co. v. Texaco Inc.,* 481 U.S. 1, 17, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (district court should have abstained from action challenging constitutionality of enforcement of state court judgment where losing party was required to post significant bond to appeal judgment); *Middlesex County Ethics Comm. v. Garden State Bar Assoc.,* 457 U.S. 423, 437, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (federal court should not interfere in county bar association's administrative proceeding concerning lawyer's ethical violations); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 609, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (federal court should not interfere in state court civil nuisance proceeding). *Younger* abstention is appropriate where the following requirements are met: (1) the state proceedings are judicial in nature; (2) the proceedings implicate important state interests; and (3) the federal plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges. *Middlesex,* 457 U.S. at 432, 102 S.Ct. 2515; *see also FOCUS v. Allegheny County Court of Common Pleas,* 75 F.3d 834 (3d Cir.1996) (citation omitted).

To the extent that plaintiffs seek injunctive relief from prosecution and equitable relief to amend the Building Code, all three *Younger* requirements are met. First, the state proceedings are judicial in nature. As rehearsed, there was a hearing before a Pittsburgh Housing Court Magistrate.

Second, the proceedings implicate important state interests. The city's criminal action against plaintiffs for violating the City Building Code implicates important state interests "in enforcing ... state and local housing codes[.]" *Carroll v. City of Mount Clemens,* 139 F.3d 1072, 1075 (6th Cir.1998); *cf. Chez Sez III Corp. v. Township of Union,* 945 F.2d 628, 633 (3d Cir. 1991) (land use issues implicate important state interests), *cert. denied,* 503 U.S. 907, 112 S.Ct. 1265, 117 L.Ed.2d 493 (1992).

Third, plaintiffs will have an adequate opportunity to raise their constitutional challenges, if any, in the state court proceedings. *See Pennzoil,* 481 U.S. at 15, 107 S.Ct. 1519 ("Article VI of the United States Constitution declares that 'the Judges in every State shall be bound' by the Federal Constitution, laws, and treaties.") Although plaintiffs complain that the Housing Court Magistrate refused to consider the issue of selective prosecution, plaintiffs will have an adequate opportunity to raise this issue on appeal, which is sufficient for *Younger* purposes. *See Middlesex,* 457 U.S. at 436, 102 S.Ct. 2515; *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.,* 477 U.S. 619, 629, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986). In sum, all three *Younger* requirements are met, and we are required to abstain from deciding plaintiffs' claim for injunctive and equitable relief. *See Heritage Farms, Inc. v. Solebury Township,* 671 F.2d 743, 746 (3d Cir.1982). Plaintiffs are required to exhaust their state court remedies before seeking review in the Supreme Court. *Huffman,* 420 U.S. at 610, 95 S.Ct. 1200.[1]

---

1. While this motion was pending, a City Housing Court Magistrate made a ruling on the citations, and plaintiffs had a right to appeal the ruling. We are uncertain whether plaintiffs exercised their right to appeal. However, as noted by the Supreme Court, plaintiffs "may not avoid the standards of Younger by simply failing to comply with the procedures of perfecting [their] appeal[.]" *Huffman,* 420 U.S. at 611 n. 22, 95 S.Ct. 1200.

### B. Bad Faith Exception

■ There are exceptions to the *Younger* doctrine. Federal courts may intervene where the state court proceeding is conducted in bad faith or is motivated by a desire to harass, or where a state statute is flagrantly and patently unconstitutional. *See Huffman,* 420 U.S. at 611, 95 S.Ct. 1200. Plaintiffs contend that the bad faith exception applies. We disagree.

■ Courts have considered three factors in determining whether a prosecution is commenced in bad faith or to harass: (1) whether the prosecution is frivolous or undertaken "without a reasonable expectation of obtaining a valid conviction," *Kugler v. Helfant,* 421 U.S. 117, 126 n. 6, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975); (2) whether it was motivated by the defendant's suspect class or in retaliation for the defendant's exercise of constitutional rights, *Younger,* 401 U.S. at 48, 91 S.Ct. 746; and (3) "whether it was conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions[.]" *Phelps v. Hamilton,* 59 F.3d 1058, 1065 (10th Cir.1995) (citations omitted). Plaintiff's argue that the prosecution was brought in retaliation for their exercise of constitutional rights, the multiple citations have little likelihood of success on the merits, others similarly situated were not prosecuted, and the sheer number of citations constitutes harassment and bad faith.

■ Although it is a close question, we find that this case is without the bad faith exception. Plaintiffs have failed to allege that defendants Cimino, Graziano and Bruce had any involvement in, or were even aware of, either the tax deficiency lawsuit filed by the City or lawsuits in which plaintiff successfully represented parties suing the City. Absent such allegations, the bad faith exception is inapplicable. *Cf. Juidice v. Vail,* 430 U.S. 327, 338, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (bad faith exception did not apply where plaintiff failed to sufficiently allege that defendants or the state court judiciary were motivated by bad faith or a desire to harass plaintiffs).

Moreover, where a City Magistrate found that several (8) of the citations have merit, we cannot say that the action was brought without any chance of success on the merits. *See Hicks v. Miranda,* 422 U.S. 332, 351, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975). In addition, although there were a total of 16 or 17 citations, it appears that all of the citations were ruled on or disposed of at the March 24 hearing. Thus, this case does not present a situation in which plaintiffs were subjected to multiple prosecutions or lawsuits. *Compare Krahm v. Graham,* 461 F.2d 703, 705–07 (9th Cir.1972) (bad faith found when city officials filed over 100 cases against plaintiffs despite acquittals in first 11 cases), *with Collins v. County of Kendall, Ill.,* 807 F.2d 95, 99 (7th Cir.1986) (no bad faith where county officials filed over thirty lawsuits over two year period), *and Phelps,* 59 F.3d at 1066 ("multiple prosecutions may not be overly burdensome if the prosecutions are, or are likely to be, consolidated into a single trial.").

■ Plaintiffs' claim for equitable relief seeks an amendment to the City's Building Code, prohibiting defendant Cimino from advising the Board of Standards and Appeals. Plaintiffs contend that Cimino's role as advisor to the Board "commingle[s] the judicial and prosecutorial functions." Pl's Br. in Opp. to Mot. to Dismiss at p. 3. The City Building Code provides, in relevant part, that: "The code official of both the Building Code and the Fire Prevention Code or a designated member of their staff shall act in the capacity of non-voting technical advisors to the [B]oard [of Standards and Appeals]." Pittsburgh Building Code § 121.2.5 (Ex. to Defs.' Mot. to Dismiss and Mem. in Supp.). We cannot conclude that, because a city official serves as a non-voting advisor to the Board, this code provision constitutes an impermissible encroachment on the judicial function of the board or that it violates separation of

powers' principles.[2] *See, e.g., Mistretta v. United States*, 488 U.S. 361, 409–11, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) (President's power to appoint and remove members of the Sentencing Commission is neither an unconstitutional usurpation of judicial power nor does it "afford [the President] influence over the functions of the Judicial Branch"); *Young v. Commonwealth of Pa. Bd. of Probation and Parole*, 487 Pa. 428, 409 A.2d 843, 848 (Pa.1979) (Parole Board's power to deny credit for time served on parole does not unconstitutionally infringe the power of the judicial branch to impose sentence).

Nor can we conclude that this provision compromises the impartiality of the board as to warrant federal intervention. *Cf. Kugler*, 421 U.S. at 126 n. 6, 95 S.Ct. 1524 (no bad faith where plaintiff alleged that certain members of the New Jersey Supreme Court and the Deputy Attorney General improperly coerced his grand jury testimony). Whether the Building Code is constitutional, on its face or as applied, can be addressed by a state court. In sum, it cannot be said that defendants acted in bad faith in citing plaintiffs for building code violations. *Accord Hicks*, 422 U.S. at 350–52, 95 S.Ct. 2281.

■■■■ To the extent that plaintiffs are seeking money damages, we are required to retain jurisdiction over this portion of the claim. *See Deakins v. Monaghan*, 484 U.S. 193, 203–04, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988) ("even if the Younger doctrine requires abstention here, the District Court has no discretion to dismiss rather than to stay claims for monetary relief that cannot be redressed in the state proceeding."). We shall stay the case until the underlying state court proceedings are concluded. *Id.* at 202–03, 108 S.Ct. 523. However, the money damages claim entails further discussion.

### C. Prosecutorial Immunity

■■■■ To the extent that plaintiffs seek money damages from the individual City defendants in their personal and official capacities, we hold that the doctrine of prosecutorial immunity bars the claim.[3] Prosecutorial immunity applies to officials who, although not prosecutors, perform prosecutorial functions such as initiating administrative or quasi-criminal proceedings. *See, e.g., Butz v. Economou*, 438 U.S. 478, 515, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). The Nernbergs allege that "Richard Bruce, Dominic Cimino and Ronald Graziano, issued or caused to be issue a series of citations against the Nernbergs, relating to alleged building violations." Pls.' Compl. at ¶ 4. The gravamen of the complaint is that defendants allegedly acted in bad faith in prosecuting the Nernbergs for building code violations. Therefore, we find that the doctrine of prosecutorial immunity bars the damages claim against Cimino, Graziano, and Bruce.[4] *Accord Davis v. Grusemeyer*, 996 F.2d 617, 631–32 (3d Cir.1993) (police de-

---

**2.** The Code contains other measures ensuring fairness: the board conducts hearings on the merits of all appeals, open to the public, at which the "appellant and/or the appellant's representative ... together with such witnesses as a party shall desire to present shall be given an opportunity to be heard." Pittsburgh Building Code § 121.5. The board provides hearing notices, *id.* at § 121.5.1, and a record is made of the hearing. *Id.*, at § 121.5.2. Further, board decisions, which are in writing and mailed to the appellant, *id.* at § 121.6, may be appealed. *Id.* at § 121.7. Given these provisions, the city official's role as advisor to the board amounts to a "negligible threat to judicial independence." *Mistretta v. United States*, 488 U.S. 361, 410, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989).

**3.** Although the parties did not raise this issue, this court may raise the issue *sua sponte* because it is relevant to our jurisdiction over this case. *Cf. Sullivan v. Barnett*, 139 F.3d 158, 179 (3d Cir.1998) (Court of Appeals raised "an Eleventh Amendment sovereign immunity issue sua sponte as it is relevant to [its] jurisdiction over the Commonwealth Defendants.")

**4.** The immunity of the City officials does not attach to the City. *See, generally, Carver v. Foerster*, 102 F.3d 96, 102–05 (3d Cir.1996) (county not entitled to legislative immunity from suit under section 1983).

tective, who allegedly assisted prosecutors in investigation, entitled to absolute immunity); Spear v. Town of West Hartford, 954 F.2d 63, 66 (2d Cir.1992) (police chief, who was acting town manager and who authorized suit against plaintiff, was entitled to absolute prosecutorial immunity).

## CONCLUSION

In sum, we will dismiss plaintiffs' section 1983 claim for injunctive and equitable relief. We will also dismiss plaintiffs' section 1983 claim for money damages against Dominic Cimino, Ronald Graziano, and Richard Bruce. We will stay plaintiffs' section 1983 claim for money damages against the City of Pittsburgh pending resolution of the underlying state court proceedings. An appropriate order will follow.